[S.F. No. 23324. Aug. 2, 1976.]

FRANK J. JAVOREK et al., Petitioners, v.
THE SUPERIOR COURT OF MONTEREY COUNTY, Respondent;
JACK BRADFORD LARSON, SR., et al., Real Parties in Interest.

## COUNSEL

Nagle, Vale, McDowall & Cotter and Vernon V. Vale for Petitioners.

Robert E. Friedrich and Jay R. Mayhall as Amici Curiae on behalf of Petitioners.

No appearance for Respondent.

Holbrook & Van Noy, James G. Van Noy, Jr., Allan C. Van Noy, Hardy, Erich & Brown and Anthony D. Osmundson for Real Parties in Interest.

## OPINION

**SULLIVAN, J.**—In this proceeding for a writ of mandate brought under section 418.10, subdivision (c), of the Code of Civil Procedure,[1] we must decide whether quasi in rem jurisdiction over nonresident defendants may be obtained in this state by attaching the obligations of their liability insurer to defend and indemnify them. We are thus called upon to consider the much discussed rule of *Seider* v. *Roth* (1966) 17 N.Y.2d 111 [269 N.Y.S.2d 99, 216 N.E.2d 312].

On January 25, 1974, real parties in interest, Jack Bradford Larson, Sr., et al.[2] (hereafter plaintiffs) commenced against petitioners Frank J. Javorek and Bonita Rae Javorek (hereafter defendants)[3] the underlying action for damages for personal injuries and wrongful death arising out of an automobile accident occurring in the State of Oregon on December

---

[1]Hereafter, unless otherwise indicated, all section references are to the Code of Civil Procedure.

[2]Real parties in interest and plaintiffs below are Jack Bradford Larson, Sr., Jack Bradford Larson, Jr., Juanita Marie Searle and Jack Mark Larson.

[3]Also named as defendants were Marion Elizabeth Brice, Jennie Catherine Bucks and El Estero Motors, a corporation (hereafter codefendants). Said codefendants are not parties to this proceeding in mandamus.

28, 1973. The complaint alleges in substance that plaintiff Jack Bradford Larson, Sr., sustained personal injuries and his wife Juanita Larson died as the result of the negligence of defendant Frank Javorek and the negligence of codefendant Marion Brice in the operation of their respective automobiles. Plaintiffs are residents of the County of Monterey. Defendants Javorek and the individual codefendants are residents of the State of Oregon. Defendant El Estero Motors is a corporation licensed to do, and doing, business in the County of Monterey.

Plaintiffs attempted to serve summons and complaint on defendants in Oregon by mail pursuant to Code of Civil Procedure section 415.40. Defendants have never been personally served in California nor have they made a general appearance in the action.

On July 22, 1974, plaintiffs applied to respondent court for the issuance of a writ of attachment to be levied on all property in Sonoma County of defendants "as per CCP 537.3 (c), including the contract obligations of State Farm Mutual Automobile Insurance Company (State Farm) to defend and indemnify each and/or both of these defendants against a debt owing to each and/or all of the plaintiffs . . . ." State Farm, an Illinois corporation doing business in California, had issued an automobile liability insurance policy to the Javoreks in Oregon. The writ of attachment was issued, and together with a notice of garnishment, was served on State Farm at its California regional office in Santa Rosa, California.

In August 1974 defendants made a special appearance before respondent court and moved pursuant to section 556 to discharge the attachment on the ground that it was issued without the filing of a written undertaking with two or more sufficient sureties. (§ 539.) It appeared that, contrary to rule 242 (b) of the California Rules of Court, both sureties were members of the State Bar of California. Plaintiffs thereupon filed an amended undertaking and respondent court denied defendants' motion.[4]

On September 25, 1974, defendants, again appearing specially, filed a "Motion to Quash Service of Summons for Lack of Personal Jurisdic-

---

[4]Defendants seek review of this order in the instant proceedings. However an order discharging or refusing to discharge a writ of attachment pursuant to section 556 is appealable. (§ 904.1, subd. (e).) Defendants apparently have not pursued that remedy nor have they demonstrated its inadequacy. No such showing having been made and a plain, speedy and adequate remedy at law apparently having been available, we decline to review the order in question. (§ 1086; see 5 Witkin, Cal. Procedure (2d ed. 1971) pp. 3867-3868, 3875-3876.)

tion, Motion to Quash the Attachment, Motion to Discharge the Attachment, Motion to Vacate the Attachment, and Motion to Stay or Dismiss Action on the Grounds of Inconvenient Forum." On November 4, 1974, the motions were denied. Defendants then sought a writ of mandate in the Court of Appeal to compel respondent court to grant their motions. The Court of Appeal granted an alternative writ but thereafter discharged it and denied defendants' petition for a writ of mandate. We granted a hearing in this court upon defendants' petition.[5]

We turn at once to examine the case of *Seider* v. *Roth, supra,* 17 N.Y.2d 111, which upon facts similar to those in the case at bench, grounded the exercise of quasi in rem jurisdiction upon the attachment of an intangible. In *Seider* the plaintiffs, husband and wife, residents of New York, were injured in an automobile accident in Vermont allegedly through the negligence of the defendant Lemiux, a resident of Quebec. Lemiux was insured under an automobile liability policy issued to him in Quebec by the Hartford Accident and Indemnity Company (Hartford) which was an insurer also doing business in the State of New York. The plaintiffs commenced an action for damages in New York and obtained an order of attachment directing the sheriff to levy upon the contractual obligation of Hartford to defend and indemnify Lemiux under the policy. The attachment papers were served on Hartford in New York; Lemiux was personally served with summons and complaint in Quebec.

A sharply divided court, in a four to three decision, upheld the attachment as a basis of quasi in rem jurisdiction. "The whole question" according to the court, was whether Hartford's contractual obligation to defendant was a debt or cause of action subject to attachment. Observing that the policy required Hartford to defend Lemiux in any automobile negligence action and to indemnify him, if judgment were rendered against him, the majority reasoned that "as soon as the accident occurred there was imposed on Hartford a contractual obligation which should be

---

[5]While respondent court purported to deny these motions, it made the following additional order: "The Court further finds, however, AND ORDERS that the jurisdiction of this Court is not *in personam* but is rather, *quasi in rem* and arises solely out of the service of the Writ of Attachment heretofore issued by this Court; IT IS FURTHER ORDERED that plaintiffs have no personal jurisdiction of FRANK J. JAVOREK or BONITA RAE JAVOREK and that their appearance herein to defend the action on the basis of *quasi in rem* jurisdiction, whether said appearance is personal or by counsel, will not confer jurisdiction on the persons of FRANK J. JAVOREK or BONITA RAE JAVOREK." Plaintiffs have not sought review of this additional order and it appears from the record before us that the only basis upon which they claim jurisdiction over defendants is the purported attachment of the obligations of State Farm to indemnify and defend.

considered a 'debt' within the meaning" of the New York attachment statutes. (17 N.Y.2d at p. 113.) The majority rested their decision on *Matter of Riggle* (1962) 11 N.Y.2d 73 [226 N.Y.S.2d 416, 181 N.E.2d 436].

In *Riggle,* Mabel Wells, a resident of New York, was injured in an automobile accident in Wyoming while she was a passenger in an automobile driven by Riggle, a resident of Illinois. Wells brought a negligence action against Riggle and effected personal service of the summons and complaint upon him in New York. Riggle died and to continue the action against his estate Wells sought the appointment in New York of an administrator of Riggle's estate, which could be made only if Riggle left real or personal property in New York. The only property allegedly left by Riggle in the State of New York was the personal obligation of an indemnity insurance carrier to defend him as an additional insured under a liability policy issued in New York upon the automobile involved in the accident to Walter Wells, its owner. The New York Court of Appeals concluded that this obligation constituted " 'a debt owing to a decedent by a resident of' " New York which was regarded as personal property under the Surrogate's Court Act sufficient for the appointment of an ancillary administrator. (11 N.Y.2d at p. 76.) In *Seider,* therefore, the majority reasoned that if the obligation of the insurance carrier was a debt which could be *administered,* it was also a debt which could be *attached* for the purpose of establishing quasi in rem jurisdiction. (17 N.Y.2d at p. 114.)

A vigorous dissent in *Seider* maintained that the debt which the plaintiff sought to attach as a basis for quasi in rem jurisdiction was a mere promise by the insurer to defend and indemnify the nonresident defendant *"if a suit is commenced* and *if damages are awarded* against the insured. Such a promise is contingent in nature. It is exactly this type of contingent undertaking which does not fall within the definition of attachable debt" under New York law. (17 N.Y.2d at p. 115; Burke, J. dissenting; italics in original.) There followed a statement which has become the basis for much criticism of the *Seider* rule: "[T]he plaintiffs indulge in circular ratiocination. The jurisdiction, they assert, is based upon a promise which evidently does not mature until there is jurisdiction. The existence of the policy is used as a sufficient basis for jurisdiction to start the very action necessary to activate the insurer's obligation under the policy. In other words, the promise to defend the insured is assumed to furnish the jurisdiction for a civil suit which must be validly commenced before the obligation to defend can possibly accrue. 'This is a bootstrap situation.' " (*Id.*) The dissent distinguished

*Riggle* on two bases. First it pointed out that in *Riggle* an action had already been brought against Riggle in his lifetime and personal service of summons and complaint had been made on him, so that the insurer's obligation to defend him had already matured. Secondly, the dissent reasoned, while an obligation to defend, even if contingent in nature, might constitute the estate of the decedent within the statute governing the appointment of an administrator, it could not, under other pertinent statutes, be the basis of an attachment so as to supply jurisdiction. (*Id.,* at p. 116.)

The New York Court of Appeals had occasion to reconsider its *Seider* decision in *Simpson* v. *Loehmann* (1967) 21 N.Y.2d 305 [287 N.Y.S.2d 633, 234 N.E.2d 669, 33 A.L.R.3d 979], motion for reargument denied 21 N.Y.2d 990 [290 N.Y.S.2d 914, 238 N.E.2d 319]. There an infant, resident of New York, had been injured in Connecticut by the propeller of a boat owned by the defendant, a resident of Connecticut. The infant and his father sued the defendant in New York and sought to obtain jurisdiction by attaching the liability insurance policy issued to the defendant by the Insurance Company of North America, a Pennsylvania corporation which did business in New York. The defendant in addition to requesting that the court reconsider its holding in *Seider* raised certain constitutional objections. A sharply divided court reaffirmed its holding in *Seider* and rejected the defendant's constitutional arguments.

Chief Judge Fuld, writing for the court, declared, "It was our opinion when we decided [*Seider*], and it still is, that jurisdiction in rem was acquired by the attachment in view of the fact that the policy obligation was a debt to the defendant. And we perceive no denial of due process since the presence of that debt in this State (see, e.g., Harris v. Balk, 198 U.S. 215, *supra*)—contingent or inchoate though it may be—represents sufficient of a property right in the defendant to furnish the nexus with, and the interest in, New York to empower its courts to exercise an in rem jurisdiction over him." (*Id.,* at p. 310.) Judge Keating concurred in an opinion in which he analogized the procedure approved of in *Seider* to a direct action against the insurer. Judge Breitel, who had joined the court after *Seider,* concurred solely on the constraint of that decision. "Only a major reappraisal by the court, rather than the accident of a change in its composition, would justify the overruling of that precedent." (*Id.,* at p. 314.) He went on, however, to comment on what he perceived to be the theoretical unsoundness and undesirable practical consequences of *Seider* so as to "hasten the day of its overruling or its annulment by legislation." (*Id.*) The dissent, written by the author of the *Seider* dissent,

maintained that New York lacked a sufficient interest in and relationship to the insurance contract to constitutionally exercise quasi in rem jurisdiction by means of an attachment of the insurer's contingent obligations.

In denying reargument, the *Simpson* court imposed a significant limitation on the scope of quasi in rem jurisdiction employed in *Seider*. First the court quoted its statement from *Simpson* v. *Loehmann, supra,* 21 N.Y.2d 305, 310, that "neither the *Seider* decision nor the present one purports to expand the basis for in personam jurisdiction in view of the fact that. the recovery is necessarily limited to the value of the assets attached, that is, the liability insurance policy. For the purpose of pending litigation, which looks to an ultimate judgment and recovery, such value is its face amount and not some abstract or hypothetical value." Additionally, in a statement which one commentator has called "miraculous" (Siegal, Practice Commentaries, N.Y. Civ. Prac. Law & Rules, § 5201 at p. 15 (McKinney Supp. 1968); but see *Minichiello* v. *Rosenberg* (2d Cir. 1968) 410 F.2d 106, 111, fn. 7), the court declared "This, it is hardly necessary to add, means that there may not be any recovery against the defendant in this sort of case in an amount greater than the face value of such insurance policy *even though he proceeds with the defense on the merits.*" (21 N.Y.2d at p. 990; italics added.) The court of appeals thereby swept away a serious objection to the *Seider* procedure, namely that it forced the nonresident defendant to choose between, on the one hand, remaining outside the state thereby risking a default judgment and possible noncompliance with his contractual obligation to cooperate with his insurer in the defense of the action, and, on the other hand, defending the action on the merits, thereby exposing himself to personal liability on an adverse judgment in an amount in excess of his policy limit.

To say the very least, *Seider* has not been well received by the commentators and the courts. Noting Judge Burke's dissent in that case (17 N.Y.2d at pp. 115-118), commentators have condemned *Seider* for its circularity of reasoning: the action in which the attachment of the insurer's obligation to defend is relied upon to establish quasi in rem jurisdiction, is itself the precondition for the accrual of the obligation being attached. (Comment, *Garnishment of Intangibles: Contingent Obligations and the Interstate Corporation* (1967) 67 Colum.L.Rev. 550, 555.) *Seider* has been criticized for establishing an exception to the usual rule that contingent obligations are not subject to attachment because it foreshadows the possibility that a general creditor of the insured—that is,

one whose claim arises out of circumstances other than those covered by the policy—will be able to attach the obligation of the insurer even though contingent. As a result, the injured plaintiff—in a sense the intended beneficiary of the coverage—may be deprived of the proceeds of the policy. (Comment, *Quasi In Rem Jurisdiction Based on Insurer's Obligations* (1967) 19 Stan.L.Rev. 654, 658-659.) The constitutionality of *Seider* has also been questioned on the ground that the presence of his insurer is an insufficient nexus between the insured and the forum upon which to base jurisdiction over him. (Stein, *Jurisdiction by Attachment of Liability Insurance* (1968) 43 N.Y.U.L.Rev. 1075.)

The *Seider* rule has not been widely accepted by courts in our sister states. Only two courts have actually followed it—the Supreme Court of New Hampshire in *Forbes* v. *Boynton* (1973) 113 N.H. 617 [313 A.2d 129],[6] and a United States District Court purporting to apply Minnesota law in *Rintala* v. *Shoemaker* (D.Minn. 1973) 362 F.Supp. 1044. At least eight states and two federal courts have rejected the *Seider* doctrine by name or in principle.[7] Almost all of these jurisdictions have rejected *Seider* on the ground that obligations of an insurer under a liability policy are contingent "debts" or property rights which cannot be attached or garnished.

The United States Supreme Court has never reviewed the constitutionality of the *Seider* procedure despite the constitutional objections raised

---

[6]While the reasoning in *Forbes* indicates that New Hampshire has adopted the *Seider* rule without reservation, there is a curious last paragraph in the opinion which suggests that the court upheld a *Seider* exercise of jurisdiction in this case where the defendant was a New York resident in retaliation against New York's adoption of the rule. "We are not holding that the *Seider* rule is to be applied generally to all cases of foreign motorists insured by a company with an office in this State and licensed to do business in New Hampshire. We are merely holding that under the circumstances·of this case in a suit by a resident of New Hampshire against a resident of New York where the *Seider* rule prevails the trial court properly denied the defendant's motion to dismiss plaintiff's action." (313 A.2d at p. 133.) In a subsequent decision, a United States District Court applying New Hampshire law refused to follow *Seider* where the defendant was not a New Yorker, but a resident of Connecticut which had not adopted *Seider*, and where the cause of action arose not out of an automobile accident but out of an accident in the defendant's home. (*Robitaille* v. *Orciuch* (D.N.H. 1974) 382 F.Supp. 977.)

[7]*Robinson* v. *Shearer & Sons, Inc.* (3d Cir. 1970) 429 F.2d 83 (considering rule B (1) of the Supplemental Rules for Certain Admiralty and Maritime Cases, Fed. Rules Civ. Proc.); *Ricker* v. *LaJoie* (D.Vt. 1970) 314 F.Supp. 401 (applying Vermont law);· *Werner* v. *Werner* (1974) 84 Wn.2d 360 [526 P.2d 370] (dictum); *Johnson* v. *Farmers Alliance Mutual Insurance Co.* (Okla. 1972) 499 P.2d 1387; *Kirchman* v. *Mikula* (La.App. 1972) 258 So.2d 701; *State, Government Employees Ins. Co.* v. *Lasky* (Mo.App. 1970) 454 S.W.2d 942; *Howard* v. *Allen* (1970) 254 S.C. 455 [176 S.E.2d 127]; *De Rentiis* v. *Lewis* (1969) 106 R.I. 240 [258 A.2d 464]; *Housely* v. *Anaconda Co.* (1967) 19 Utah 2d 124 [427 P.2d 390]; *Jardine* v. *Donnelly* (1964) 413 Pa. 474 [198 A.2d 513] (per curiam opn.).

by the dissent in *Simpson* and the numerous law review articles which have questioned its validity. The leading authority on the constitutionality of *Seider* is *Minichiello* v. *Rosenberg, supra,* 410 F.2d 106, which, in an opinion by Judge Friendly, upheld it against a due process challenge. The *Seider* procedure was analogized to Louisiana's direct action statute sustained in *Watson* v. *Employers Liability Corp.* (1954) 348 U.S. 66 [99 L.Ed. 74, 75 S.Ct. 166]. Although *Minichiello* upheld the *Seider* rule, it nevertheless indicated, as did *Farrell* v. *Piedmont Aviation, Inc.* (2d Cir. 1969) 411 F.2d 812 (in an opinion also by Judge Friendly), that *Seider* would be subject to serious "constitutional doubt" unless its application were limited in three important ways. These limitations were explained as follows: First, *Seider* may be applied only in favor of a plaintiff who is a resident of the forum; a nonresident may not avail himself of such rule in the State of New York where many insurers have offices, so as to obtain jurisdiction over a nonresident defendant.[8] Second, as the New York Court of Appeals had indicated in its per curiam opinion denying reargument in *Simpson,* there may be no recovery in excess of the policy limits even though the nonresident defendant appears and defends on the merits. Finally, ". . . neither New York nor any other state could constitutionally give collateral estoppel effect to a *Seider* judgment when the whole theory behind this procedure is that it is in effect a direct action against the insurer and that the latter rather than the insured will conduct the defense." (*Minichiello* v. *Rosenberg, supra,* 410 F.2d at p. 112.)

[8]This limitation sharply distinguishes the *Seider* procedure from all other forms of quasi in rem jurisdiction and indicates that *Seider* is far removed from its basis in *Harris* v. *Balk* (1905) 198 U.S. 215 [49 L.Ed. 1023, 25 S.Ct. 625]. Theoretically and traditionally, an exercise of quasi in rem jurisdiction depends entirely upon the presence of property of the defendant in the forum; the residence of the plaintiff is irrelevant. The theory is that because property is situated in the state, courts of the state have power over it to determine the relative rights of the plaintiff and defendant therein. In *Balk, supra,* the Supreme Court held that the presence of the garnishee-debtor in the state was sufficient to give the state the power to adjudicate rights in the liquidated debt which he owed to the defendant. While the plaintiff, Epstein, was a resident of the forum, the Supreme Court neither mentioned that fact. nor appears to have considered it significant in determining whether the forum could exercise jurisdiction over the debt. The *Minichiello* court seemed to feel that the mere presence of an insurance carrier did not provide the state with a sufficient interest in or relationship to the *contingent* obligations of the insurance contract for it to require the defendant to appear and litigate rights in the policy absent some other connection with the forum such as the plaintiff being a resident.

Admittedly such approach is not unlike our own in *Atkinson* v. *Superior Court* (1957) 49 Cal.2d 338 [316 P.2d 960], where we applied general principles of fair play and substantial justice governing jurisdiction over property and persons to the question of jurisdiction over an intangible. In *Atkinson,* however, the contacts with the forum were significantly greater than those in *Seider* and *Minichiello,* specifically, the activities out of which a cause of action arose against the obligor and the out of state defendant had all occurred in California.

There is only one reported decision in this state in which the validity of a *Seider* attachment as a basis for quasi in rem jurisdiction has been considered. In *Turner* v. *Evers* (1973) 31 Cal.App.3d Supp. 11 [107 Cal.Rptr. 390], the plaintiffs, California residents, while temporarily in the State of Washington had their automobile serviced by the defendant in preparation for their return trip. After they had driven but a short distance, the vehicle became totally inoperative. Claiming that the defendant had failed to service it properly, the plaintiffs brought an action against him in California alleging breach of contract, negligence and fraud. In order to obtain jurisdiction over the defendant, they caused a writ of attachment to be levied against the obligations of the defendant's liability insurance carrier, which had an office in this state, to defend and indemnify him. As we explain *infra,* we disagree with the holding of the *Turner* court that a *Seider* type attachment is permissible under California law.

In the case at bench, the crucial question whether the attachment was valid and therefore the quasi in rem jurisdiction properly invoked must be determined in the light of California's interim attachment law. (§ 537 et seq.) Section 537 authorizes an attachment in the following circumstances: "The plaintiff, in an action specified in Section 537.1, at the time of issuing the summons, or at any time afterward, may have the property specified in Section 537.3 of a defendant specified in Section 537.2 attached in accordance with the procedure provided for in this chapter, as security for the satisfaction of any judgment that may be recovered, unless the defendant gives security to pay such judgment, as provided for in this chapter." The relevant sections permit the attachment of "all property" (§ 537.3, subd. (c)) of a defendant "not residing in this state" (§ 537.2, subd. (d)), in "an action . . . for the recovery of money" (§ 537.1, subd. (b)).[9]

---

[9]Section 537 et seq. were enacted by the Legislature in 1972 (Stats. 1972, ch. 550, p. 942) to meet the constitutional infirmities of the former law as set forth in *Randone* v. *Appellate Department* (1971) 5 Cal.3d 536 [96 Cal.Rptr. 709, 488 P.2d 13]. (2 Witkin, Cal. Procedure (1970) Provisional Remedies (1975 Supp.) § 298A, p. 132.) The former section 537 permitted the attachment of the "property of the defendant" without limitation as to type and therefore the cases interpreting that section can be and will be referred to in interpreting the current law.

Section 537 et seq. were originally scheduled to expire December 31, 1975, (Stats. 1972, ch. 550, p. 952) and to be repealed as of January 1, 1976. (Stats. 1974, ch. 1516.) The expiration date has now been postponed to December 31, 1976, with repeal to be effective on January 1, 1977. (Stats. 1975, ch. 200.) In place of these sections, an entirely new and revised attachment scheme will become operative. This new attachment law resulted from a comprehensive study and recommendations relating to prejudgment attachment by the California Law Revision Commission. Known as "The Attachment Law" (§ 482.010), this law will be contained in a new title 6.5, Attachment, of part 2, Civil Actions of the Code of Civil Procedure.

Plaintiffs have purported to attach "[a]ll property of each defendant as per CCP 537.3(c), including the contract obligations of State Farm Mutual Automobile Insurance Company . . . to defend and indemnify . . . these defendants against a debt owing to . . . the plaintiffs . . . ." Defendants are persons not residing in this state, and, therefore, the issue before us is whether "the contract obligations of State Farm Mutual Automobile Insurance Company . . . to defend and indemnify . . . these defendants . . ." constitute "property" of the defendants under the above sections of our Code of Civil Procedure.

California law permits the garnishment of debts and other intangibles and section 543 prescribes the procedure for levying a writ of attachment where the property of the defendant to be attached is not in his possession but consists of credits or other personal property in the possession of a third person (the garnishee) or debts owing to the defendant by such third person. It has been said that it is not necessary that the garnishee have in his possession the actual money of the defendant, that "It is enough that he *owes a debt* to the defendant. And the general test is whether the defendant has an enforceable claim against the garnishee." (2 Witkin, Cal. Procedure (1970) Provisional Remedies, § 219, p. 1616, italics in original, citing *Walker* v. *Doak* (1930) 210 Cal. 30, 36 [290 P. 290].) While earlier cases required that the defendant have an accrued cause of action against the garnishee—that the debt be due at the time the writ is levied—such is no longer the law. (*Id.,* at p. 1617.) "[I]t is now established in this state that a present right of action upon the obligation is not essential to a valid garnishment," (*Brunskill* v. *Stutman* (1960) 186 Cal.App.2d 97, 104 [8 Cal.Rptr. 910]) but a " 'debt which is uncertain and contingent in the sense that it may never become due and payable, is not subject to garnishment.' " (*Id.*; see also *Hustead* v. *Superior Court* (1969) 2 Cal.App.3d 780, 786 [83 Cal.Rptr. 26]; *Dawson* v. *Bank of America* (1950) 100 Cal.App.2d 305, 309 [223 P.2d 280].) A distinction exists between situations where only the *amount* of liability is uncertain and those where the fact of *liability* is uncertain. " 'Where there is no contingency as to the garnishee's liability, the only contingency being as to the amount thereof, and where the amount of the liability is capable of definite ascertainment in the future, there is no such contingency as prevents garnishment of the claim, even though, it has been held, it may be that eventually it will be found that nothing is due.' " (*Brunskill* v. *Stutman, supra,* 186 Cal.App.2d 97, 105; see also *Hustead* v. *Superior Court, supra,* 2 Cal.App.3d 780, 786; *Meacham* v. *Meacham* (1968) 262 Cal.App.2d 248, 252 [68 Cal.Rptr. 746].)

In the instant case, defendants' liability insurance policy provides that State Farm agrees with the insured "in consideration of the payment of the premium . . . [*t*]*o pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages* because of (A) bodily injury sustained by other persons, and, (B) property damage, caused by accident arising out of the ownership, maintenance or use, including loading or unloading, of the owned motor vehicle; *and to defend, with attorneys selected by and compensated by the company, any suit against the insured alleging such bodily injury or property damage and seeking damages which are payable hereunder even if any of the allegations of the suit are groundless, false or fraudulent;* but the company may make such investigation, negotiation and settlement of any claim or suit as it deems expedient." (Italics added.) It is these obligations which plaintiffs have purported to attach.

■ Taking up, first, State Farm's obligation to indemnify defendants, we observe that it is clearly contingent upon more than a determination of the amount of liability. The insurer has no duty to pay until the insured becomes "legally obligated to pay as damages" a sum of money. In other words, State Farm has no liability to pay until defendants' liability has been determined. If it is determined that they have no liability, the insurer's liability never accrues.

Some commentators have argued that the obligation of an insurer to indemnify under policy language such as that involved in the instant case "implied a valid in personam judgment against the insured." (Siegel, Supplementary Practice Commentaries, N.Y. Civ. Prac. Law & Rules, § 5201, 1965 com. pt. I, at p. 72 (McKinney Supp. (1972)); see also Comment, *Attachment of Liability Insurance Policies* (1968) 53 Cornell L.Rev. 1108, 1112.) Thus, the insurer's obligations would never accrue where the only possible judgment would be one in rem. We need not resolve this point. It is enough to say that, on the basis of the authorities cited above, there must first be a determination of the insured's liability before the insurer's obligation to indemnify matures to the extent that it becomes subject to attachment. We therefore disagree with, and disapprove to the extent that it is inconsistent with this opinion, *Turner* v. *Evers, supra,* 31 Cal.App.3d Supp. 11, wherein it was stated, inter alia, that "the obligation to indemnify requires only the *possibility* of a valid judgment either against the insured personally or depriving him of his property" in order for it to be attachable. (*Turner, supra,* at p. 18; italics added.)

Our attention has also been directed to *Brainard* v. *Rogers* (1925) 74 Cal.App. 247 [239 P. 1095]. There the plaintiff creditor brought an action for goods sold and delivered against the defendant who had sustained a complete loss by fire of his merchandise, furniture and fixtures. The plaintiff garnished the proceeds in the hands of the insurer of two policies of fire insurance covering the loss before the defendant had even presented his proof of loss—a condition precedent to recovery under the policies—or adjusted the loss. The court upheld the levy despite the fact that no proofs of loss had been filed since the creditor could make the proofs if the insured failed to do so. Commenting on *Brainard,* this court in *Dept. of Water & Power* v. *Inyo Chem. Co.* (1940) 16 Cal.2d 744, 751 [108 P.2d 410], articulated its rule to be as follows: "[W]here *liability* already exists and the policy furnishes the required standard by which the *amount* of the liability can be ascertained and fixed, then such liability is a debt 'owing' to the insured within the meaning of the attachment sections of the Code of Civil Procedure." (Italics in original.)[10] It is important that in *Brainard,* involving an insured's direct claim against his insurer, the only condition precedent to the duty to pay was proof of the fact of loss together with the amount thereof. However, in the instant case of a claim by a third party, liability of the insurer is contingent upon the determination of the *liability* of the *insured,* as well as proof of the fact of loss and the amount thereof. We find *Brainard* markedly distinguishable from the case at bench.

Accordingly, in resolving the question whether State Farm's obligation to indemnify defendants is subject to garnishment and may therefore constitute a basis for quasi in rem jurisdiction, we reject the rule announced in *Seider.* We are unpersuaded by the rationale of the majority in that case because of what we perceive to be a pervasive circularity of reasoning. Indeed, the dissent criticized the rule as "circular ratiocination" and "bootstrap reasoning." (17 N.Y.2d at p. 115.) To accept its logic it is first necessary to assume its conclusion. Its thesis in essence is this: *If* there is a valid judgment, in personam or in rem, against the insured, *then* the insurer is obligated to indemnify. *Therefore,* the court will permit the attachment of this obligation as a source of quasi in rem jurisdiction so that the judgment can be entered. We can discern no logic in this thesis since the hard fact remains that the insurer's obligation to indemnify upon which the court's jurisdiction to

---

[10]The precise question at issue in *Brainard* v. *Rogers, supra,* 74 Cal.App. 247, was whether the garnishee was a person "owing debts" to the defendant as that term is used in sections 542-545, which describe the means by which such obligations may be levied upon. That is essentially the same question before this court in the instant case.

hear the case depends, does not come into existence until the insured's liability has been determined in the very case itself. We conclude that State Farm's obligation to indemnify is so contingent and uncertain that it is not subject to garnishment under California statutes and the cases discussed by us above.

■ Plaintiffs, however, seek to avoid the settled rule that contingent obligations are not subject to attachment by arguing that the implied covenant of good faith and fair dealing, recognized by recent decisions of this court (*Gruenberg* v. *Aetna Ins. Co.* (1973) 9 Cal.3d 566 [108 Cal.Rptr. 480, 510 P.2d 1032]; *Crisci* v. *Security Ins. Co.* (1967) 66 Cal.2d 425 [58 Cal.Rptr. 13, 426 P.2d 173]; *Comunale* v. *Traders & General Ins. Co.* (1958) 50 Cal.2d 654 [328 P.2d 198, 68 A.L.R.2d 883]), makes certain the insurer's obligation to indemnify prior to the filing of suit and the determination of the insured's liability. We do not agree.

We first note that plaintiffs could not attach the covenant of good faith and fair dealing itself as a basis for quasi in rem jurisdiction. Clearly that obligation is not a debt or other species of property subject to attachment. It is a duty owed to the insured personally which, like the duty of reasonable care, does not even give rise to a cause of action until there has been a breach and which does not obligate the insurer to pay money to the insured until the former's liability for a breach has been determined. It is therefore an obligation which is " 'uncertain and contingent in the sense that it may never become due and payable . . . .' " (*Brunskill* v. *Stutman, supra,* 186 Cal.App.2d 97, 104.)

Because the implied covenant of good faith and fair dealing is itself contingent, it cannot make the insurer's express obligation to indemnify sufficiently certain to be subject to attachment. While the insurer in discharging its duty of good faith to the insured may under certain circumstances be required to settle a claim against its insured within policy limits (*Johansen* v. *California State Auto. Assn. Inter-Ins. Bureau* (1975) 15 Cal.3d 9 [123 Cal.Rptr. 288, 538 P.2d 744]; *Crisci* v. *Security Ins. Co., supra,* 66 Cal.2d 425; *Comunale* v. *Traders & General Ins. Co., supra,* 50 Cal.2d 654), that specific obligation is contingent upon there being a substantial likelihood of a recovery in excess of policy limits (*Johansen, supra,* at p. 15; *Comunale, supra,* at p. 659) and upon the willingness of the claimant to accept a settlement. Moreover, the contingent implied covenant of good faith and fair dealing, with its obligation to settle under certain circumstances, is in addition to the express obligation to indemnify and matures independently. "That

responsibility is not the requirement mandated by the terms of the policy itself—to defend, settle, or pay. It is the obligation, deemed to be imposed by the law, under which the insurer must act fairly and in good faith in discharging its contractural responsibilities." (*Gruenberg* v. *Aetna Ins. Co., supra,* 9 Cal.3d 566, 573-574.) Thus, the indemnification obligation which plaintiffs purported to attach is not rendered any less contingent by the separate and distinct duty of good faith and fair dealing.

■ Having concluded that the trial court's exercise of quasi in rem jurisdiction cannot be based on the insurer's obligation to indemnify, we now take up plaintiffs' contention that nevertheless it can be based on the insurer's obligation to *defend* which is clearly subject to attachment. Contrary to plaintiffs' claim, we find this asserted basis of jurisdiction vulnerable to the same objections just discussed.

Under the automobile liability policy issued by it to defendant State Farm agreed "to defend, with attorneys selected by and compensated by the company, any suit against the insured." Prior to the commencement of the underlying action, there was a mere executory promise to defend the insured which might never have ripened into a present duty had the action never been filed. Again, this is an obligation which, " 'contingent in the sense that it may never become due and payable, is not subject to garnishment.' " (*Brunskill* v. *Stutman, supra,* 186 Cal.App.2d 97, 104.) The argument that the obligation to defend is subject to attachment because it matures upon the commencement of the action in which attachment is relied on as a basis of quasi in rem jurisdiction, involves the same type of circular reasoning employed with respect to the obligation to indemnify.

Even assuming arguendo that this executory promise to defend is a sufficiently certain, presently existing obligation, it is not the type of interest which is subject to attachment. Under the terms of the policy, State Farm is obligated only to provide a defense with attorneys of its own choosing. There is no obligation to pay money to the insureds so that they may provide their own defense. Such an obligation to provide personal services is not capable of transfer so as to satisfy the claims of an attaching creditor. (See Comment, *Quasi in Rem Jurisdiction Based on Insurer's Obligations, supra,* 19 Stan.L.Rev. 654, 655-656.) If it is assumed that the obligation to defend could be translated into a monetary equivalent, how is that to be done? "What . . . is the value of this duty to a potential purchaser at execution sale? Because the insurance carrier

could not be obligated to defend a stranger to the contract by such a sale, we cannot conceive what there is to be sold. Rather, we are convinced that whatever value inheres in the contractual duty of the insurer is personal to the insured." (*Robinson* v. *Shearer & Sons, Inc., supra,* 429 F.2d 83, 86; *Missouri* ex rel. *G.E.I.C.O.* v. *Lasky, supra,* 454 S.W.2d 942, 950.)

To the argument that the duty to defend is incapable of valuation, it is no answer to say that some estimate can be made at the outset of litigation as to the insurer's potential cost in attorney's fees and court costs. If the insurer fulfills its obligation, these expenditures will be made and as the lawsuit reaches a conclusion, the so-called value of this obligation will approach zero, until the obligation will have been completely extinguished. At the point at which plaintiffs have obtained a judgment, there will no longer exist an asset out of which that judgment can be satisfied. Furthermore, plaintiffs will not then be able to satisfy their judgment out of the proceeds of the policy. Since any quasi in rem judgment must be satisfied solely from the garnished property (*First National Bank* v. *Eastman* (1904) 144 Cal. 487, 491-492 [77 P. 1043]), and since only the obligation to defend could under this theory be garnished to provide quasi in rem jurisdiction, plaintiffs could not then reach the obligation to indemnify up to the policy limits as a means of satisfying their judgment. Such a judgment would be meaningless. Under the constitutional limitations set forth in *Minichiello,* this judgment could not be in personam even though the defendants had appeared and defended on the merits, and it could not be given collateral estoppel effect in any subsequent proceeding. The law will simply not countenance such an idle act. (Civ. Code, § 3532.)[11]

---

[11]Plaintiffs make two other arguments which we reject briefly. First, they contend that under Probate Code sections 301 and 721 a policy of indemnity insurance comprises an estate subject to administration thus supporting the appointment of a local administrator wherever the insurer is found so as to establish jurisdiction for suit against the estate. By analogy, they argue, an indemnity insurance policy is subject to attachment for quasi in rem jurisdiction. This is the argument based upon *Matter of Riggle, supra,* 11 N.Y.2d 73, which was advanced in *Seider* and was also asserted in *Turner* v. *Evers, supra,* 31 Cal.App.3d Supp. 11. Nonetheless, no published California decision has ever held that a policy of indemnity insurance is a basis for local administration. Moreover, we believe that there are sufficiently different factors and considerations involved in the situation where the nonresident defendant is deceased, as opposed to the instant case where the defendants are alive, that the argument in favor of the existence of an estate for purposes of probate jurisdiction is not persuasive as to whether contingent obligations of an insurer are attachable. (See *Seider* v. *Roth, supra,* 17 N.Y.2d at p. 116; Burke, J. dissenting.)

Second, plaintiffs argue that since section 537.3, subdivision (c), permits attachment of all property of a nonresident defendant, that section necessarily authorizes attachment of

We conclude that in the case at bench the obligations of defendants' liability insurer to defend and indemnify defendants are not of such a nature as to be subject to attachment so as to confer on the court below quasi in rem jurisdiction. We reject as inapplicable in California the rule announced in *Seider* v. *Roth, supra,* 17 N.Y.2d 111, and cases following it, and we disapprove, to the extent that it is inconsistent with the views herein expressed, *Turner* v. *Evers, supra,* 31 Cal.App.3d Supp. 11. In view of these conclusions, we need not reach defendants' contention that the rule of *Seider* is unconstitutional.[12]

Defendants are entitled to a writ of mandate directing the trial court to quash the levy of the writ of attachment and to quash service of summons. Under current California law, there is no statutory procedure for challenging an attachment by special appearance on the ground that the property levied upon is not subject to attachment. A motion to discharge the attachment under section 556 lies only to assert that the writ was irregularly or improperly issued. Nonetheless, it has been recognized that our courts have the power to quash the levy of a writ of attachment where the writ has been levied upon property not subject to attachment. (*Burke* v. *Superior Court* (1969) 71 Cal.2d 276, 279, fn. 3 [78 Cal.Rptr. 481, 455 P.2d 409]; *Holmes* v. *Marshall* (1905) 145 Cal. 777, 783 [79 P. 534]; *Property Research Financial Corp.* v. *Superior Court* (1972) 23 Cal.App.3d 413, 416 [100 Cal.Rptr. 233]; 2 Witkin, Cal. Procedure (2d ed. 1970) Provisional Remedies, § 205.) With the levy of the writ of attachment quashed, no property of defendants is before the court upon which quasi in rem jurisdiction may be based. There is therefore "no

the specific forms of property for which attachment is permitted in limited circumstances under section 537.3, subdivision (b). By reference to the California Uniform Commercial Code, section 537.3, subdivision (b), permits the attachment of interests in or claims under insurance policies. (Cal. U. Com. Code, § 9106.) We first note that section 9106 of the California Uniform Commercial Code was amended effective January 1, 1976, which amendment deleted the sentence relating to insurance policies, although such amendment is of course not applicable to this case where the attachment was levied in 1974. Nonetheless, the types of interests in insurance policies included in California Uniform Commercial Code section 9106 are only those contractual and property rights which are used or may become customarily used as a commercial security. (Comment, Uniform Com. Code, § 9106.) While we do not intend hereby to suggest any final definition of interests in insurance contracts which may become the subject of security interests, we seriously doubt if the obligations at issue are the types of interests which would ever be the subject of a security interest. In any event, we conclude that "property" for purposes of section 537.3, subdivision (c), does not include interests which are contingent in the sense that they may never become due and payable.

[12]Plaintiffs urge us to apply to the case before us the new attachment statutes which become operative January 1, 1977. We decline to do so since they do not apply to the writ of attachment issued in the instant case. (See Stats. 1974, ch. 1516; Stats. 1975, ch. 200.)

basis of judicial jurisdiction existing between such defendant[s] and this state . . . ." (Judicial Council comment to § 418.10 in Li, Attorney's Guide to Cal. Jurisdiction and Process (Cont. Ed. Bar 1970) § 1.38, p. 95) since the trial court has already determined that it lacks in personam jurisdiction over defendants (see fn. 5, *ante*). Defendants are thus entitled to have service of summons quashed "on the ground of lack of jurisdiction of the court over [them]." (Code Civ. Proc., § 418.10, subd. (a)(1).)

Let a peremptory writ of mandate issue directing respondent superior court to quash the levy of the writ of attachment and to quash the service of summons in accordance with the views expressed in this opinion.

Wright, C. J., McComb, J., Tobriner, J., Mosk, J., Clark, J., and Richardson, J., concurred.