[Civ. No. 40746. First Dist., Div. Two. June 3, 1977.]

HOTELES CAMINO REAL, S. A., Petitioner, v.
THE SUPERIOR COURT OF SAN MATEO COUNTY, Respondent;
MARCUS R. LARSON et al., Real Parties in Interest.

**COUNSEL**

Owen, Melbye & Rohlff and Duane E. Clapp, Jr., for Petitioner.

No appearance for Respondent.

James S. Graham, Richard I. Singer and Odell & Grathwohl for Real Parties in Interest.

**OPINION**

**ROUSE, J.**—Petitioner, a Mexican corporation, seeks mandate to compel respondent superior court to vacate its order granting real parties' motion for a right to attach order and authorizing a writ of attachment upon property of petitioner. We conclude that petitioner is

entitled to the relief which it seeks and, accordingly, direct that a peremptory writ of mandate issue.

The matter arose when real parties in interest, who are California residents, commenced an action against defendants, Western International Hotels, Western International Hotels de Mexico, The Camino Real of Cabo San Lucas, and Does I through XX, seeking damages for injuries sustained after consuming contaminated food and beverages during the time they were paying guests at petitioner's Camino Real Hotel in Cabo San Lucas, Mexico.

Petitioner is a foreign corporation and is not qualified to do business in California; however, petitioner is insured under the terms of a policy issued by the American Motorists Insurance Company (hereafter American), a corporation which does business in this state. In this action, real parties sought to attach American's obligation to defend and indemnify petitioner under the terms of that policy. Following a hearing on real parties' application, made pursuant to the provisions of section 492.020 of the Code of Civil Procedure, the trial court found that the application and supporting affidavits satisfied all of the requirements of section 492.030 of the Code of Civil Procedure and issued a writ of attachment against "All rights, privileges and entitlements held by Defendant Hoteles Camino Real, S. A. under a certain policy of insurance issued by American Motorists Insurance Company . . . ."

■ The facts in this proceeding are remarkably similar to those which were before the California Supreme Court in *Javorek* v. *Superior Court* (1976) 17 Cal.3d 629 [131 Cal.Rptr. 768, 552 P.2d 728]. Plaintiffs in *Javorek* were California residents involved in an automobile accident in Oregon. They filed suit in Monterey County against defendants, who were residents of Oregon, and thereafter obtained a writ of attachment against State Farm Insurance Company's obligation to defend and indemnify defendants. The Supreme Court ordered that a peremptory writ of mandate issue directing respondent superior court to quash the levy of the writ of attachment. In so doing, the court held that the obligations of defendants' liability insurer to defend and indemnify defendants were not of such a nature as to be subject to attachment so as to confer on the court below quasi in rem jurisdiction. The court rejected, as inapplicable in California, the rule announced in *Seider* v. *Roth* (1966) 17 N.Y.2d 111 [269 N.Y.S.2d 99, 216 N.E.2d 312], and cases following it, and disapproved, to the extent that it was inconsistent with the views

therein expressed, *Turner* v. *Evers* (1973) 31 Cal.App.3d Supp. 11 [107 Cal.Rptr. 390]. (*Javorek* v. *Superior Court, supra,* at p. 646.)

*Javorek* was decided in light of California's interim attachment law. (Code Civ. Proc., § 537 et seq.; *Javorek* v. *Superior Court, supra,* at p. 639, fn. 9.) The court expressly declined to decide whether the attachment would be proper under the new attachment statutes, since they did not apply to that case. (*Javorek, supra,* p. 646, fn. 12.) The question here presented is whether *Javorek* applies in light of title 6.5 of the Code of Civil Procedure (Code Civ. Proc., § 481.010 et seq.), known and cited as The Attachment Law (Code Civ. Proc., § 482.010), which became operative on January 1, 1977.

Section 492.010 of the Code of Civil Procedure provides for attachment in actions against nonresidents: "Notwithstanding subdivision (a) of Section 483.010, an attachment may be issued in any action for the recovery of money brought against any of the following: [¶] (a) An individual who does not reside in this state. [¶] (b) A foreign corporation not qualified to do business in this state under the provisions of Chapter 21 (commencing with Section 2100) of Division 1 of Title 1 of the Corporations Code. [¶] (c) A foreign partnership which has not filed a designation pursuant to Section 15700 of the Corporations Code."

Respondent court found that the property sought to be attached was subject to attachment pursuant to section 492.040 of the Code of Civil Procedure. That section provides, in pertinent part, that "Notwithstanding Sections 487.010 and 487.020, a writ of attachment issued under this chapter may be levied upon any property of a defendant for which a method of levy is provided by Article 2 (commencing with Section 488.310) of Chapter 8."

Section 488.370 of the Code of Civil Procedure provides for a levy upon an account receivable or a chose in action: "(a) To attach an account receivable or a chose in action, the levying officer shall serve the account debtor or, in the case of an interest in or a claim under an insurance policy, the insurer with a copy of the writ and the notice of attachment."

Real parties contend that section 488.370 permits the attachment of a "chose in action"; further, that the term "chose in action" includes an interest in or a claim under an insurance policy pursuant to the provisions of section 481.050 of the Code of Civil Procedure: " 'Chose in

action means any right to payment which arises out of the conduct of any trade, business, or profession and which (a) is not conditioned upon further performance by the defendant or upon any event other than the passage of time, (b) is not an account receivable, (c) is not a deposit account, and (d) is not evidenced by a negotiable instrument, security, chattel paper, or judgment. The term includes an interest in or a claim under an insurance policy and a right to payment on a nonnegotiable instrument which is otherwise negotiable within Division 3 (commencing with Section 3101) of the Commercial Code but which is not payable to order or to bearer."

Real parties argue that the new statutes expressly authorize attachment of a claim under an insurance policy, and that, by their enactment, the Legislature has manifested an intention to adopt the rule of *Seider* v. *Roth* (1966) 17 N.Y.2d 111 [269 N.Y.S.2d 99, 216 N.E.2d 312]. This, they contend, has "effectively mooted" the decision in *Javorek*. Such argument must be viewed with caution, however, since the enactment of the legislation preceded *Javorek*, hence the Legislature did not have the benefit of that decision at the time of enactment.

Real parties assert that because the insuring agreement listed petitioner as an insured, petitioner had an interest in that policy within the meaning of sections 481.050 and 488.370, subdivision (a); further, that because the statutes do not distinguish between liquidated and unliquidated claims, or between claims arising in favor of the insured or a third party, unliquidated claims arising in favor of a third party must be regarded as being subject to attachment. They concede, however, that the use of the term "claim" cannot be understood without a reference to the decision in *Javorek*.

The terms of the liability insurance policy which had been subject to attachment in *Javorek* provided that State Farm agreed with the insured " 'to pay on behalf of the insured all sums *which the insured shall become legally obligated to pay as damages* . . .' " and further " 'to defend, with attorneys selected by and compensated by the company, any suit . . . .' " (P. 641; italics added.)

The provisions in the policy issued by American to cover petitioner in this case are quite similar: "To pay on behalf of the insured all sums *which the insured shall become legally obligated to pay as damages* . . ." and "to defend any suit against the insured alleging injury or property damage . . . ." (Italics added.)

In *Javorek,* the court noted that the insurer's obligation to indemnify, upon which the court's jurisdiction to hear the case depended, did not come into existence until the insured's liability had been determined in the very case itself. Thus, it concluded that State Farm's obligation to indemnify was so contingent and uncertain that it was not subject to garnishment under California statutes. (Pp. 642-643.)

The *Javorek* court also commented upon the insurer's obligation to defend: "Under the automobile liability policy issued by it to defendant State Farm agreed 'to defend, with attorneys selected by and compensated by the company, any suit against the insured.' Prior to the commencement of the underlying action, there was a mere executory promise to defend the insured which might never have ripened into a present duty had the action never been filed. Again, this is an obligation which, ' "contingent in the sense that it may never become due and payable, is not subject to garnishment." ' [Citation.]" (P. 644.)

The plaintiffs in *Javorek* also argued that, by reference to the California Uniform Commercial Code, former section 537.3, subdivision (b), of the Code of Civil Procedure permitted the attachment of interests in or claims under insurance policies. (Cal. U. Com. Code, former § 9106.) In response the court, in a footnote, rejected the argument: "Nonetheless, the types of interests in insurance policies included in California Uniform Commercial Code section 9106 are only those contractual and property rights which are used or may become customarily used as a commercial security. (Comment, Uniform Com. Code, § 9106.) While we do not intend hereby to suggest any final definition of interests in insurance contracts which may become the subject of security interests, we seriously doubt if the obligations at issue are the types of interests which would ever be the subject of a security interest. In any event, we conclude that 'property' for purposes of section 537.3, subdivision (c), does not include interests which are contingent in the sense that they may never become due and payable." (*Javorek* v. *Superior Court, supra,* at pp. 645-646, fn. 11.)

While the attachment law, which became effective January 1, 1977, makes it clear that certain types of interests in and claims under insurance policies may be attached, we find nothing to indicate that contingent interests of the nature considered by the court in *Javorek* may be attached under its provisions.

Nor can we accept those authorities cited by real parties which authorize such attachment. *Minichiello* v. *Rosenberg* (2d Cir. 1968) 410 F.2d 106, cert. den., 396 U.S. 844 [24 L.Ed.2d 94, 90 S.Ct. 69], and *Rintala* v. *Shoemaker* (D.Minn. 1973) 362 F.Supp. 1044, were considered by the California Supreme Court before it determined to reject the *Seider* rule (*Javorek* v. *Superior Court, supra,* at pp. 637-638). In *Kirchen* v. *Orth* (E.D.Wis. 1975) 390 F.Supp. 313, 318-319, the court construed Wisconsin statutes to find that the carrier, by virtue of settlement negotiations of its agent conducted within the state, was subject to personal jurisdiction and that an action was maintainable against it notwithstanding its no-action clause. Although the Minnesota Supreme Court has construed the specific terms of a Minnesota statute to permit such an attachment, the court recognized that other states had rejected the procedure which it approved. (*Savchuk* v. *Rush* (1976) Minn. [245 N.W.2d 624, 629, fn. 10], U.S. app. pending.)

Real parties argue further that an attachment of the type made here would be consistent with the policy of section 11580 of the California Insurance Code, as expressed in *Roberts* v. *Home Ins. Indem. Co.* (1975) 48 Cal.App.3d 313, 321 [121 Cal.Rptr. 862]. *Roberts* noted that section ·11580 was not applicable since the policy had been issued in Louisiana. The court held that a direct action could be maintained in this state against the insurer of a Louisiana tortfeasor on the basis of a Louisiana statute which authorized such direct action. That case, however, represents an exception to the rule which was most recently set forth in *Zahn* v. *Canadian Indem. Co.* (1976) 57 Cal.App.3d 509, at page 513 [129 Cal.Rptr. 286]: "It is fundamental that generally speaking the injured party may not directly sue an insurer of the alleged tortfeasor. [Citation.] The statutory cause of action created by Insurance Code section 11580 and clauses drafted in compliance therewith is based on the unsatisfied judgment. (4 Witkin, Summary of Cal. Law, Torts, § 760, p. 3060.) Hence the contingency giving rise to an injured party's right as a third party beneficiary to enforce the contract is the legally established liability of the insured."

We are not persuaded that the provisions of the attachment law, which became effective January 1, 1977, require us to depart from the rule of *Javorek.* We conclude that the obligation of American to defend and indemnify petitioner is not of such a nature as to be subject to

attachment by real parties, so as to confer upon respondent court quasi in rem jurisdiction over petitioner.

Let a peremptory writ of mandate issue as prayed for in this petition.

Taylor, P. J., and Bray, J.,* concurred.

The petition of the real parties in interest for a hearing by the Supreme Court was denied July 28, 1977.

---

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.