JOSEPH A. LONGO, Plaintiff-Appellant, v. AAA-MICHIGAN, a/k/a Auto Club Insurance Association, *et al.*, Defendants-Appellees.

First District (3rd Division)   No. 1—89—0477

Opinion filed July 18, 1990.—Rehearing denied August 29, 1990.

Joseph A. Longo, of Mt. Prospect, appellant *pro se.*

Williams & Montgomery, of Chicago, for appellees.

PRESIDING JUSTICE CERDA delivered the opinion of the court:

Plaintiff, Joseph A. Longo, appeals from the dismissal of his complaint for lack of personal jurisdiction. He argues that the Michigan defendants, AAA-Michigan, a/k/a Auto Club Insurance Association (ACIA), and Auto City Auto Recovery (ACAR), had sufficient Illinois contacts for jurisdiction and that the trial court erred in restricting discovery.

Plaintiff's complaint alleged that he was a resident of Illinois, that ACAR was a Michigan corporation, and that ACIA was part of the nationwide AAA organization that had offices in Illinois. On July 18, 1987, ACIA and ACAR sold to Don Glime, d/b/a Perri Auto Sales, a 1980 Porsche automobile. ACIA and ACAR gave to Glime an odometer statement which was separate from the title and which verified that the mileage was not actual. ACIA and ACAR did not complete the odometer statement on the reverse side of the title. Upon plaintiff's purchase of the automobile, Glime gave to plaintiff a separate odometer statement that stated that the mileage was actual.

Plaintiff further alleged that ACIA and ACAR knew or should have known the importance of completing the odometer statement on the reverse of the title, that a purchaser would rely on the title, that odometer fraud either could have been prevented or its likelihood reduced by the completion of the odometer statement and purchase price on the reverse of the title, and that the automobile could or would be purchased ultimately by a nonresident of Michigan.

Count II requested damages under the Illinois Consumer Fraud and Deceptive Business Practices Act (Ill. Rev. Stat. 1987, ch. 121½, par. 261 *et seq.*), and count III requested damages under the Illinois odometer act.

ACIA and ACAR were served in Michigan; AAA-Michigan was not served. ACIA and ACAR filed special and limited appearances and moved to dismiss the complaint for lack of personal jurisdiction.

Defendants filed the affidavit of C.R. Benson, ACIA's vice-president and secretary, in support of the motion to dismiss. Benson swore that: (1) ACIA was a Michigan reciprocal interinsurance exchange; (2) ACIA did not own or use any property in Illinois; (3) ACIA did not transact business in Illinois; (4) ACIA did not maintain an office, personnel or telephone listings in Illinois; (5) ACIA did not advertise or solicit business in Illinois; (6) ACIA was not a part or a member of the national AAA; and (7) ACIA was not affiliated with any Illinois AAA organization. An affidavit of William Morman, general counsel of ACIA, also swore to these statements.

Defendants also filed the supporting affidavit of Paul F. Lamoureux, vice-president of ACAR, who swore that: (1) ACAR was an auction car dealer organized under Michigan law with its offices located in Michigan; (2) ACAR did not own or use any property in Illinois; (3) ACAR did not transact any business in Illinois; (4) ACAR did not maintain an office, personnel or telephone listings within Illinois; (5) ACAR did not advertise or solicit business in Illinois; (6) the sale of the automobile and the transfer of its title from ACAR and ACIA to Glime occurred in Michigan; (7) ACAR had no contact with plaintiff; and (8) Glime was not ACAR's agent.

A responsive affidavit of plaintiff swore that he spoke to employees Daniel Converse, claims manager Mitchell, and Jim Richards of "Auto Club, 'AAA' " who "indicated that they had offices in Chicago" and that "they could submit their file on the subject automobile to their Chicago office from where somebody could testify." In another affidavit, plaintiff swore that: (1) he was injured in Illinois; (2) the automobile's defects were discovered in Illinois; (3) the repairs were made in Illinois; (4) his mental anguish, anxiety and despair were suffered in Illinois; and (5) the statements made by AAA's Dearborn, Michigan, office referred to in the first affidavit were made by AAA employees and were party admissions.

Plaintiff moved to take discovery, and he was given leave to depose one representative of defendants. Later, plaintiff was given leave to depose C.R. Benson of ACIA, but plaintiff filed a motion to compel the attendance of a suitable deponent when Benson became unavailable. Plaintiff desired to depose a "managerial substitute" rather than ACIA's in-house counsel on the basis that in-house counsel would not be aware of how business was actually conducted, which was allegedly important to determine how "AAA-Michigan" related to "AAA-Illinois." Plaintiff also requested leave to file interrogatories or to request documents for the deposition although the court already had denied leave to file interrogatories.

Plaintiff's motion to compel the deposition of Benson and for additional discovery was denied. ACIA was ordered to present Mr. Morman, ACIA's general counsel, to be deposed. An affidavit of one of defendants' attorneys stated that Morman told him that Morman was the most knowledgeable person in ACIA as to its business activities as they related to jurisdiction.

Morman testified in his deposition that he had been an attorney for Automobile Club of Michigan (ACM) for 30 years and that he sometimes was counsel for ACIA. ACM was a member of the AAA, which was a national motor club service organization. State clubs were organized under their own State laws and rendered service to members of other clubs travelling around the country. Various companies were part of AAA of Michigan, including a travel agency and other insurance companies. Each club had its own special services and benefit programs for its own members.

ACIA was a separate legal entity from ACM but ACIA and ACM had common officers and directors, and employees of both companies would use some Michigan facilities. AAA-Michigan was only an identification term; it was not a legal entity. ACIA did not have meetings in Illinois. ACIA did not place the advertisement for AAA in the toll-free directory, and ACIA was not listed in the directory. ACIA wrote insurance in Michigan and only for ACM members, but AAA membership was purchased separately from ACIA's insurance. A member of AAA-Michigan could obtain travel services and emergency road service from a Chicago Motor Club office, and the cost would be borne by ACM.

If one of ACIA's insureds had an automobile accident in Illinois, ACIA would retain an Illinois company to assess the damage to the automobile. ACIA would request a "claim service" to be provided by the "insurance affiliate of the Chicago Motor Club," but ACIA and the Chicago Motor Club did not correspond. Ordinarily, an ACIA claims person would not come to Illinois in connection with an insured's accident there, but it was possible that one would come to Illinois in order to speak to attorneys about a claim in litigation. The claim would be settled in the Michigan office.

Morman further testified that the automobile at issue had been stolen and that it was found after ACIA had taken title upon making a claim payment to its insured. Automobiles owned by ACIA were sold through various auctions. If an automobile was involved in an out-of-State collision, the salvage would not be returned to Michigan but probably would be sold as salvage by the claims service company to salvage dealers. Repairable cars could be repaired in Illinois.

On January 17, 1989, plaintiff moved to amend his complaint based on the deposition testimony. Leave was granted, and the complaint was amended to add that: (1) AAA-Michigan had affiliate offices in Illinois; (2) AAA-Michigan hired Illinois law firms and adjusters; (3) AAA-Michigan advertised in Illinois by including its name and addresses in a booklet distributed throughout Illinois at AAA offices; (4) AAA-Michigan shared with other AAA branches a common telephone number which was published in Illinois; (5) AAA-Michigan solicited business from AAA-Illinois members who were moving to Michigan; (6) AAA-Illinois informed AAA-Michigan of these moves and *vice versa*; (7) AAA-Michigan regularly sold automobiles acquired from its insureds at an auction which was frequented by numerous non-Michigan purchasers; (8) AAA-Michigan sent these automobiles into the stream of commerce; (9) defendants jointly and/or severally presented the title to the broker with a statement that the mileage was 58,408; (10) the automobile was sold to the broker for $5,100; and (11) plaintiff purchased it for $9,000 with a stated mileage of 59,125.

In another affidavit in opposition to the motion to dismiss, plaintiff swore that: (1) Morman had been unable to testify about the activities of ACAR except that it was the agent of AAA-Michigan; (2) Morman had been unable to testify about the "various procedures" of AAA-Michigan; (3) in the week of December 5, 1988, plaintiff dialed from Illinois the AAA toll-free number and was told upon inquiry that ACIA was part of AAA; (4) plaintiff was given ACIA's telephone number, and he verified it by telephoning; (5) plaintiff also spoke to an agent whose name he would not reveal in a branch office of AAA in Naperville, Illinois, who stated that: (a) if an accident occurred in Illinois, AAA-Illinois would tow the insured of ACIA; (b) tour books given to AAA-Michigan members were charged to Michigan; (c) if a Michigan member moved to Illinois, he had to submit his Michigan membership card to the AAA-Illinois office to get an enrollment credit; (d) the card would then be sent to AAA-Michigan; and (e) a log of transferees from Michigan was sent to the main office of AAA-Illinois, and she believed that this information was relayed to AAA-Michigan; (6) in the same week plaintiff spoke to another AAA-Illinois office and he was told that AAA-Illinois and AAA-Michigan by postcard informed each other when one of their members moved to the other State and that each office "in effect" solicited business and helped each other obtain business when a member moved; and (7) in the same week plaintiff spoke to John Barnard of AAA-Illinois, who stated that AAA-Michigan and AAA-Illinois would cancel the insurance policy and membership card of a member moving to the other State.

Attached to the affidavit was a letter from plaintiff to John Barnard of AAA-Chicago Motor Club summarizing their telephone conversation on how plaintiff's friend from Michigan would transfer his membership in ACIA to the AAA-Chicago Motor Club. Also attached was a letter from another individual regarding the transfer of plaintiff's friend's membership from AAA-Michigan to AAA-Chicago Motor Club which included a statement that he would advise AAA-Michigan that the friend would not be renewing her policy. Also attached was a printed listing of affiliated AAA clubs and branches.

The trial court dismissed the amended complaint for lack of personal jurisdiction, and the action was dismissed with prejudice.

Plaintiff first argues that defendants waived jurisdiction by not limiting their arguments below to contesting jurisdiction, by attacking the sufficiency of the complaint, by engaging in settlement discussions, and by stating in a pleading in support of their motion to dismiss that the court should not consider plaintiff's amended complaint. Plaintiff cites *Koplin v. Saul Lerner Co.* (1964), 52 Ill. App. 2d 97, 101, 201 N.E.2d 768, in which the court stated that if defendants had filed a motion to strike, they would have admitted the court's jurisdiction.

■ Defendants filed special and limited appearances, and they contested jurisdiction by filing a motion to dismiss. Defendants did not contest the merits of the claim in their pleadings filed on the issue of jurisdiction, and any references to the complaint were in connection with the jurisdiction issue. Plaintiff's representation that settlement was discussed is unsupported in the record, and he cannot supplement the record by his "testimony" in his brief. Even if it were apparent that settlement discussions took place, defendants could not thereby concede the court's jurisdiction.

Plaintiff argues that there was personal jurisdiction over defendants in Illinois because they did business in Illinois, had an Illinois property interest, and, within the meaning of the long-arm statute, transacted business and committed a tort in Illinois.

■ Plaintiff has the burden of proving jurisdiction over nonresident defendants. (*R.W. Sawant & Co. v. Allied Programs Corp.* (1986), 111 Ill. 2d 304, 310, 489 N.E.2d 1365.) Due process requires that in order to assert *in personam* jurisdiction over a nonresident corporate defendant who is not present in Illinois, defendant must have certain minimum contacts with Illinois so that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. (*International Shoe Co. v. Washington* (1945), 326 U.S. 310, 316, 90 L. Ed. 95, 102, 66 S. Ct. 154, 158.) The casual presence of the corporate agent or his conduct of single or isolated items of activities on the cor-

poration's behalf are not enough to subject the corporation to suit on causes of actions unconnected with the activities there. *International*, 326 U.S. at 317, 90 L. Ed. 2d at 102-03, 66 S. Ct. at 158-59.

■ Jurisdiction over a foreign corporation may be obtained under the theory that by doing business in Illinois, it is deemed to have submitted to Illinois jurisdiction. (*Cook Associates, Inc. v. Lexington United Corp.* (1981), 87 Ill. 2d 190, 196, 429 N.E.2d 847.) The corporation has to conduct business to the extent to warrant the inference that it subjected itself to Illinois jurisdiction. (*Pembleton v. Illinois Commercial Men's Association* (1919), 289 Ill. 99, 104, 124 N.E.2d 355.) Activities greater than solicitation by employees who have only authority to solicit business in Illinois are required. *Cook*, 87 Ill. 2d at 201.

■ Another possible basis for jurisdiction is the long-arm statute under which a nonresident who, in person or through an agent, transacts business or commits a tortious act in Illinois submits himself to the jurisdiction of Illinois as to any cause of action arising from the doing of such acts. (Ill. Rev. Stat. 1987, ch. 110, pars. 2—209(a)(1), (a)(2).) A defendant is not amenable to service under the long-arm statute on the basis of the transaction of business in Illinois if the cause of action did not arise from the transaction of business in Illinois. *Cook*, 87 Ill. 2d at 198.

■ The only connections of ACIA with Illinois were the hiring of Illinois attorneys to litigate claims under its insurance policies, the hiring of Illinois claim service companies to assess the damage to automobiles damaged in Illinois, and the sale of automobiles in Illinois as salvage. These activities were merely incidental to ACIA's business of insuring automobiles owned by Michigan residents who were ACM members. The record also does not indicate any activity of ACAR in Illinois or affecting Illinois other than the selling in Michigan of automobiles which could be bought by Illinois residents. Defendants were not doing business in Illinois for purposes of jurisdiction of Illinois courts. (See *Reeves v. Baltimore & Ohio R.R. Co.* (1988), 171 Ill. App. 3d 1021, 1028, 526 N.E.2d 404 (where tort occurred outside of Illinois, where any business transacted in connection with the job on which plaintiff was injured did not occur in Illinois, and where defendant did not derive any income from Illinois at the time it was sued, defendant was not doing business in Illinois).) In addition, jurisdiction could not be based on the transaction of business prong of the long-arm statute because the cause of action did not arise from any business transaction in Illinois.

■ Plaintiff's amended complaint made many references to AAA-

Michigan having extensive contacts with Illinois. However, AAA-Michigan is not a legal entity. ACM was a member of AAA-Michigan, but was never made a defendant in this cause. Plaintiff's affidavits, not based on personal knowledge, are inadequate on their face under Illinois Supreme Court Rule 191 (107 Ill. 2d R. 191) to rebut the affidavits and depositions of ACIA's representative. Therefore, any contacts that AAA-Michigan might have had with Illinois cannot be attributed to the defendants.

Plaintiff next cites several cases in support of his additional argument that defendants committed a tort in Illinois because the injury occurred there upon his discovery of his economic loss. In *Gray v. American Radiator & Standard Sanitary Corp.* (1961), 22 Ill. 2d 432, 435-36, 176 N.E.2d 761, a product that was allegedly constructed in another State exploded in Illinois and injured the plaintiff, and the court held that the place of a wrong was where the last event took place which was necessary to render the actor liable and that the tort was committed in Illinois because the negligence in manufacturing could not be separated from the injury.

In *Mergenthaler Linotype Co. v. Leonard Storch Enterprises, Inc.* (1978), 66 Ill. App. 3d 789, 795, 383 N.E.2d 1379, the court stated that a single tortious act occurring in Illinois would establish jurisdiction there even without other Illinois contact or presence and that the situs of the tort for the purposes of a predecessor of the present long-arm statute was where the injury occurred. The court held that no injury occurred in Illinois as a result of the alleged acts of unfair competition because the only injury of economic loss was suffered in New York. *Mergenthaler*, 66 Ill. App. 3d at 795-96.

In *Bodine's, Inc. v. Sunny-O, Inc.* (N.D. Ill. 1980), 494 F. Supp. 1279, 1282, there was long-arm jurisdiction under the commission of tort prong over a nonresident manufacturer who was sued by an Illinois resident for tortious fraud in selling inferior goods because plaintiff was injured in Illinois. The court referred to *Gray*'s statement that the situs of the tort was the place of the last event necessary to render the actor liable, and, on the basis that the injury was economic rather than physical, the court rejected defendant's argument that the place of injury was not in Illinois. *Bodine's*, 494 F. Supp. at 1282-83.

In *Wimmer v. Koenigseder* (1984), 128 Ill. App. 3d 157, 470 N.E.2d 326, a suit based on the death of a teenager who drank liquor served at defendants' Wisconsin taverns was held to have arisen from the commission of a tortious act within the meaning of the long-arm statute. (*Wimmer*, 128 Ill. App. 3d at 163.) It was held that the last event that took place necessary for liability was the injury in Illinois

(*Wimmer*, 128 Ill. App. 3d at 164), but *Wimmer* was reversed in a decision that did not address the jurisdiction issue. *Wimmer v. Koenigseder* (1985), 108 Ill. 2d 435, 484 N.E.2d 1088.

Defendant cites *Green v. Advance Ross Electronics Corp.* (1981), 86 Ill. 2d 431, 438, 427 N.E.2d 1203, which held that economic injury suffered by an Illinois parent corporation was too remote for long-arm jurisdiction where funds were misappropriated in Texas from a subsidiary corporation. *Green* has been interpreted as having limited the general rule that a tort occurs where the harm is felt by its holding that, if the only relevant Illinois fact were that the consequences of misconduct were felt in Illinois, then the tortious act was not committed in Illinois. (See *e.g., Club Assistance Program, Inc. v. Zukerman* (N.D. Ill. 1984), 594 F. Supp. 341, 346. But see *MC Club Services, Inc. v. Stovall* (N.D. Ill. 1989), 714 F. Supp. 370, 373 (interpretation that *Green*'s holding was not based on fact that injury in Illinois was economic, but on fact that it was indirect).) The Illinois Supreme Court has since held that an economic loss which is felt in Illinois is not sufficient for jurisdiction if the acts occurred outside of Illinois. *R.W. Sawant & Co. v. Allied Programs Corp.* (1986), 111 Ill. 2d 304, 312, 489 N.E.2d 1365.

■■ The situs of the last event necessary to make defendants liable for fraud was not Illinois, where plaintiff discovered the fraud and repaired the automobile, but was Michigan, because that is where the fraud occurred. The fact that plaintiff felt the consequences of the nonresident's tortious acts, which took place outside of Illinois, in his "Illinois pocketbook" was insufficient to confer jurisdiction. *Mott Corp. v. Montanya* (1986), 141 Ill. App. 3d 943, 946, 491 N.E.2d 98.

Plaintiff next argues that ACIA had a property interest in all the insureds' automobiles traveling in Illinois and that ACIA's obligation to insure these automobiles created quasi-*in rem* jurisdiction. Plaintiff also argues that ACIA had a property interest in the potential judgments or settlements in Illinois lawsuits. In support, plaintiff cites *In re Estate of Hoffman* (1972), 6 Ill. App. 3d 438, 286 N.E.2d 103, *Seider v. Roth* (1966), 17 N.Y.2d 111, 216 N.E.2d 312, 269 N.Y.S.2d 99, and *Lefcourt v. Sea Crest Hotel & Motor Inn, Inc.* (1967), 282 N.Y.S.2d 896, 54 Misc.2d 376.

■■ A quasi-*in rem* action is based on a claim for money begun by attachment or other seizure of property when the court has no jurisdiction over the person of the defendant but has jurisdiction over a thing belonging to him or over a person who either is indebted or owes a duty to defendant. (*Belcher Co. of Alabama, Inc. v. M/V Maratha Mariner* (5th Cir. 1984), 724 F.2d 1161, 1163-64.) The theory of quasi-*in*

*rem* jurisdiction is that the courts have the power to determine the relative rights of the parties because property is situated in the State. *Javorek v. Superior Court* (1976), 17 Cal. 3d 629, 638 n.8, 131 Cal. Rptr. 768, 775 n.8, 552 P.2d 728, 735 n.8.

*Hoffman* (6 Ill. App. 3d at 441) held that property in Illinois was an asset sufficient to confer jurisdiction on Illinois courts to admit a will to probate, but it does not provide authority for quasi-*in rem* jurisdiction over a suit against nonresident corporate defendants. *Seider* (17 N.Y.2d 123, 216 N.E.2d 312, 269 N.Y.S.2d 107) held that jurisdiction in New York where defendant's insurer resided was proper over a personal injury action arising out of Vermont because the policy obligation to defend was attached as a debt owed to defendant by the insurer. *Lefcourt* (282 N.Y.S.2d at 899, 54 Misc.2d at 378) found that an attachment served upon a corporate defendant's insurer which was licensed to do business in New York was constitutionally sufficient to sustain quasi-*in rem* jurisdiction in New York over a personal injury suit arising out of Massachusetts although the corporate defendant neither did business nor owned property in New York.

▉ In the instant case, there was no seizure of any property of defendants in Illinois, and there was no basis to find that defendants owned property in Illinois. We find that there was no quasi-*in rem* jurisdiction.

Plaintiff also argues that the trial court erred in not permitting discovery of ACAR, in prohibiting written discovery of ACIA, and in not permitting the deposition of ACIA's manager because ACIA's general counsel was unable to answer many questions concerning the procedures of defendants.

▉ The trial court has broad discretion in supervising discovery. (*In re Marriage of Falstad* (1987), 152 Ill. App. 3d 648, 653, 504 N.E.2d 908.) The record reflects that plaintiff was able to obtain from Morman answers to questions relevant to jurisdiction over ACIA. In addition, it was not an abuse of discretion to prohibit additional discovery in light of ACAR's affidavit which swore that ACAR was a Michigan auction car dealer that did not transact business in Illinois, own or use property in Illinois, maintain an office, personnel or telephone listings in Illinois, or advertise or solicit business in Illinois.

The judgment of the circuit court is affirmed.

Affirmed.

WHITE and FREEMAN, JJ., concur.