Marjorie BAKER, Plaintiff–Appellant,

v.

Elizabeth YOUNG and Glynnis Jane Gartside, Defendants–Appellees.

No. 90SA43.

Supreme Court of Colorado,
En Banc.

Sept. 10, 1990.

Turner and Meiklejohn, P.C., Scott A. Meiklejohn, Denver, for plaintiff-appellant.

No appearance for defendants-appellees.

Justice QUINN delivered the Opinion of the Court.

The United States Circuit Court of Appeals for the Tenth Circuit certified to this court, pursuant to C.A.R. 21.1, the following question of law pertinent to an appeal pending in that court:

> Whether Colorado law defines an insurer's obligation to indemnify and defend a non-resident insured as nonexempt property under Colo.R.Civ.P. 102(a)[, 7A C.R. S.1989 Supp.], thereby subjecting the obligation to attachment by a Colorado resident seeking to obtain *quasi in rem* jurisdiction?

We agreed to respond to the certified question and now answer that question in the affirmative.

I.

The certified question arose in a diversity action filed on June 6, 1983, in the United States District Court for the District of Colorado. The action was filed by Marjorie Baker, the plaintiff, against Elizabeth Young and Glynnis Jane Gartside, the defendants, both of whom reside in Australia. The complaint alleged that the plaintiff, a citizen and resident of Colorado, was injured in an automobile accident on September 4, 1981, in Vail, Colorado; that the other vehicle involved in the accident had been rented by the defendant Gartside from Budget–Rent–A–Car Systems; that at the time of the accident the defendant Gartside was riding as a passenger but retained the right to control the vehicle while the defendant Young was operating the vehicle for a common purpose; and that the defendant Young negligently drove the vehicle into the automobile operated by the plaintiff and thereby caused serious and permanent injuries to the plaintiff. Because the plaintiff was unable to effect personal service on the defendants, the district court dismissed the complaint without prejudice on July 31, 1985.

The plaintiff refiled the case on December 12, 1986, but because she was still unable to obtain service on the defendants, she petitioned the court for a writ of attachment pursuant to Federal Rule of Civil

Procedure 64. The rule states that "all remedies providing for seizure of ... property for the purpose of securing satisfaction of the judgment ultimately to be entered in the action are available under the circumstances and in the manner provided by the law of the state in which the district court is held." The plaintiff claimed that liability insurance furnished to Gartside by Budget–Rent–A–Car Systems as part of the rental agreement constituted non-exempt property subject to attachment before judgment under Colorado Rule of Civil Procedure 102(a), which provides as follows:

> Any party, at the time of filing a claim, in an action on contract, express or implied, or in an action to recover damages for tort committed against the person or property of a resident of this state, or at any time after the filing but before judgment, may have nonexempt property of the party against whom the claim is asserted (hereinafter defendant), attached by an *ex parte* order of court in the manner and on the grounds prescribed in this Rule, unless the defendant shall give good and sufficient security as required by section (f) of this Rule. No *ex parte* attachments before judgment shall be permitted other than those specified in this Rule.[1]

The district court denied the plaintiff's petition for a writ of attachment. Although the court acknowledged that under Colorado decisional law a potential right of indemnity under a liability insurance contract qualifies as the personal property of an out-of-state decedent under the Colorado Probate Code, *see Price v. Sommermeyer*, 195 Colo. 285, 577 P.2d 752 (1978), the court nonetheless was of the view that there were significant differences between the insurer's obligation to defend and indemnify for the purpose of exercising probate jurisdiction and that same obligation as the basis for obtaining a prejudgment writ of attachment. The court described these differences as follows:

> An administrator is vested with the 'same power over the title to property of the estate that an absolute owner would have, in trust however, for the benefit of the creditors and others interested in the estate.' C.R.S. § 15–12–711 (1987). Thus, title of property is not immediately affected by appointment. Further actions, taken by the personal representative, in accordance with his or her fiduciary duties, [are] required in order to change rights in property of the estate. On the other hand, execution of a writ of attachment creates a lien on defendant's property.

These differences, as well as the contingent nature of the insurer's obligation under a liability insurance contract, led the court to conclude that "an insurer's obligation to indemnify and defend is not 'property' within the meaning of Colo.R.Civ.P. 102."[2]

---

1. C.R.C.P. 102(c)(2) provides, in pertinent part, that no writ of attachment shall issue unless it be shown by affidavit that a reasonable probability exists that the defendant has for more than four months been absent from the state, or the whereabouts of the defendant are unknown, or the defendant is a nonresident of the state, and all reasonable efforts to obtain *in personam* jurisdiction over the defendant have failed. C.R.C.P. 102(d) states that before issuance of a writ of attachment the plaintiff is obliged to furnish a written undertaking by a corporate surety company, or by two or more sufficient sureties, in an amount set by the court, not exceeding double the amount claimed, "to the effect that if the defendant recover judgment, or if the court shall finally decide that the plaintiff was not entitled to an attachment, the plaintiff will pay all costs that may be awarded to the defendant, and all damages defendant may sustain by reason of the wrongful suing out of the attachment." C.R.C.P. 102(f) provides that if the defendant, upon service of the writ, deposits the amount of money claimed by the plaintiff or gives an adequate surety undertaking to satisfy the claim, the sheriff shall take the money or undertaking in lieu of the property.

2. Neither the federal district court's ruling nor the record submitted on the certified question shows where the car rental agreement between Gartside and Budget–Rent–A–Car Systems was executed. We note, however, that the plaintiff's complaint alleged that Gartside's vehicle had a Colorado license plate. It thus could be inferred that the rental agreement was executed in Colorado and that Budget–Rent–A–Car Systems, the insurer, was authorized to transact its business in this state. These inferences, however, are unnecessary to resolve the limited nature of the question before us.

The court ruled that its order denying the writ of attachment involved a controlling question of law and that an immediate appeal from the order may materially advance the ultimate termination of the litigation.[3] The Tenth Circuit Court of Appeals permitted the plaintiff's appeal from the district court's order and then certified the question to this court as involving a matter of state public policy.

II.

[redacted] It is important to clarify at the outset of our analysis the limited nature of the question before us. We must answer whether an insurer's obligation to defend and indemnify a nonresident insured under a liability insurance contract is a nonexempt property interest subject to attachment under C.R.C.P. 102 for the purpose of *quasi in rem* jurisdiction.[4] An entirely separate question is whether, if the insurer's obligation to defend and indemnify does constitute an attachable nonexempt property interest of the insured, the insured's property interest is sufficiently related to the forum and the lawsuit as to constitute a valid basis for the court's assertion of *quasi in rem* jurisdiction to the extent of the insured's interest in the property. This latter question is not part of the certified question, and we do not address it in this opinion.

The United States Supreme Court considered the constitutional basis for *quasi in rem* jurisdiction in *Shaffer v. Heitner,* 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977), and *Rush v. Savchuk,* 444 U.S. 320, 100 S.Ct. 571, 62 L.Ed.2d 516 (1980). *Shaffer* involved a shareholder's derivative suit by a nonresident of the state of Delaware against several corporate and individual defendants. The Delaware court exercised *quasi in rem* jurisdiction over the defendants by an order of sequestration directed to various items of the defendants' Delaware property completely unrelated to the plaintiff's cause of action. The Supreme Court reversed the sequestration order and held that before a court may exercise *quasi in rem* jurisdiction over a nonresident defendant there must be a sufficient relationship among the defendant, the forum, and the litigation such that maintenance of the suit does not offend those traditional notions of fair play and substantial justice which are associated with a court's power to adjudicate personal rights to property located within a state.

Subsequent to *Shaffer,* the Supreme Court decided *Rush v. Savchuk,* 444 U.S. 320, 100 S.Ct. 571. In *Rush,* the plaintiff, a former resident of Indiana, filed a negligence claim in a Minnesota court against an Indiana resident for damages as a result of injuries suffered by the plaintiff in an automobile accident in Indiana while the plaintiff was riding as a passenger in the defendant's automobile. The court held that a state could not constitutionally exercise *quasi in rem* jurisdiction over the nonresident defendant by attaching the contractual obligation of the insurer to defend and indemnify the defendant who had no contacts with the forum state, even though the insurer was licensed to do business in the forum state. In so holding, the court rejected the rule of *Seider v. Roth,* 17 N.Y.2d 111, 269 N.Y.S.2d 99, 216 N.E.2d 312 (1966). *Seider* authorized the attachment of a liability insurer's contractual obligation to defend and indemnify a nonresident insured defendant under an automobile liability policy, issued to the nonresident defendant by an insurance company doing business in New York, as the basis

3. 28 U.S.C. § 1292(b) (1982) authorizes a district judge, in entering an order not otherwise appealable in a civil action, to state in writing that the order involves "a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." The Court of Appeals, in its discretion, may permit the appeal to be taken from the order if application is made within ten days after entry of the order.

4. A judgment *in rem* affects the interests of all persons in designated property, while a judgment *quasi in rem* affects the interests of a particular person or persons in designated property. *Shaffer v. Heitner,* 433 U.S. 186, 199 n. 17, 97 S.Ct. 2569, 2577 n. 17, 53 L.Ed.2d 683 (1977); *ReMine ex rel. Liley v. District Court,* 709 P.2d 1379, 1382 (Colo.1985).

for a New York court's assertion of *quasi in rem* jurisdiction over the defendant in connection with the plaintiff-resident's negligence claim against the defendant arising out of an automobile accident on a Vermont highway. In rejecting the *Seider* rule, the Court in *Rush* stated:

> We held in *Shaffer* that the mere presence of property in a State does not establish a sufficient relationship between the owner of the property and the State to support the exercise of jurisdiction over an unrelated cause of action. The ownership of property in the State is a contact between the defendant and the forum, and it may suggest the presence of other ties. [*Shaffer*] 433 U.S. at 209 [97 S.Ct. at 2582]. Jurisdiction is lacking, however, unless there are sufficient contacts to satisfy the fairness standard of *International Shoe*. [*International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945)].
>
> Here, the fact that the defendant's insurer does business in the forum State suggests no further contacts between the defendant and the forum, and the record supplies no evidence of any. [The insurer's] decision to do business in Minnesota was completely adventitious as far as [the defendant] was concerned. [The defendant] had no control over that decision, and it is unlikely that he would have expected that by buying insurance in Indiana he had subjected himself to suit in any State to which a potential future plaintiff might decide to move. In short, it cannot be said that the *defendant* engaged in any purposeful activity related to the forum that would make the exercise of jurisdiction fair, just, or reasonable, *see Kulko v. California Superior Court*, 436 U.S. 84, 93–94 [98 S.Ct. 1690, 1697–98, 56 L.Ed.2d 132] (1978);

*Hanson v. Denckla*, 357 U.S. 235, 253 [78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283] (1958), merely because his insurer does business there.

444 U.S. at 328–29, 100 S.Ct. at 577–78.[5]

Both *Shaffer* and *Rush* addressed whether the attachment of a nonresident defendant's interest in intangible assets within the forum state—i.e., common stock and options to purchase stock in *Shaffer* and an insurance contract in *Rush*—provided a valid basis, consistent with traditional notions of fair play and substantial justice, for a court's assertion of *quasi in rem* jurisdiction over a nonresident defendant in connection with a lawsuit filed against the nonresident defendant. *See Burnham v. Superior Court of California, Marin County*, — U.S. —, 110 S.Ct. 2105, 2115, 109 L.Ed.2d 631 (1990) (opinion by Scalia, J., joined by Chief Justice Rehnquist and Justice Kennedy, noting that *Shaffer* stands for proposition that "when the 'minimum contact' that is a substitute for physical presence consists of property ownership it must, like other minimum contacts, be related to the litigation"). We emphasize again that, in contrast to the issue in *Shaffer* and *Rush*, the basic question before us here is limited to whether the interest which the plaintiff attempted to attach is nonexempt property for the purpose of a prejudgment attachment.

The question of whether the insurer's obligation constitutes attachable "property" is purely a matter of state law, as expressly acknowledged by the Supreme Court in *Rush*, 444 U.S. at 328 n. 14, 100 S.Ct. at 577 n. 14, and by the Tenth Circuit in certifying the question to this court. If an insurer's obligation to defend and indemnify a nonresident insured defendant under an automobile liability policy constitutes nonexempt property subject to at-

---

5. The Court in *Rush* noted that the only affiliating circumstance offered to show a relationship among the defendant, the state of Minnesota, and the plaintiff's lawsuit was that the defendant's insurance company conducts business in the state, but went on to state that the insurer's obligation to defend and indemnify the insured was not sufficient to provide the state with the power to determine the defendant's liability for an out of state accident. 444 U.S. at 328–29, 100

S.Ct. at 577–78. In addition, the Court concluded that the requisite minimum contacts with the forum cannot be established by treating the attachment procedure as the functional equivalent of a direct action against the insurer and thereby considering the insured "a nominal defendant" in order to obtain jurisdiction over the insurer. *Id.* at 330–31, 100 S.Ct. at 578–79. The question certified to us, of course, does not involve these issues.

tachment, then, so long as there are other constitutionally sufficient contacts between the nonresident defendant and the forum for the exercise of jurisdiction, a court may properly assert *quasi in rem* jurisdiction over the nonresident defendant to the extent of the defendant's interest in the property. If, on the other hand, the insurer's obligation to defend and indemnify does not constitute property, there would be no basis for the assertion of *quasi in rem* jurisdiction. It is the "property" question, and only that question, that we address in this case.

### III.

■ The term "property" includes a multiplicity of interests and is commonly used to denote everything that is the subject of ownership, whether tangible or intangible, as well as those rights and interests which have value to the owner. *See Black's Law Dictionary* 1095 (5th ed. 1979). The concept of property, therefore, encompasses those enforceable contractual rights that traditionally have been recognized as choses in action. *See In re Marriage of Grubb,* 745 P.2d 661, 665 (Colo.1987) (employee's vested but unmatured pension right is not a mere expectancy, but rather an enforceable contract right, commonly referred to as a chose in action, and thus a form of property). In the instant case, the federal district court acknowledged that in the context of probate jurisdiction the term "property" includes an insurer's obligation to defend and indemnify a nonresident insured under an automobile liability policy, but then treated the insurer's obligation as nonproperty for the purpose of a court's assertion of *quasi in rem* jurisdiction over a nonresident insured. We reject such a distinction and conclude that an insurer's obligation to defend and indemnify an insured under an automobile liability policy does constitute a form of property for purposes of C.R.C.P. 102.

We view our 1978 decision in *Price v. Sommermeyer,* 195 Colo. 285, 577 P.2d 752, as persuasive authority on the question certified to us in this case. In *Sommermeyer,* Mrs. and Mr. Price, domiciliaries of Nebraska, were involved in an automobile accident near Brush, Colorado. At the time of the accident Mrs. Price was driving the vehicle and crashed into the rear of a truck parked on the shoulder of a highway. Mr. Price was killed instantly, and Mrs. Price died approximately twenty days later. A wrongful death action was filed on behalf of the Price children in the Larimer County District Court, against the estate of their mother, along with a contemporaneous motion for the appointment of a personal representative to administer Mrs. Price's Colorado estate. Price's Colorado estate consisted solely of an automobile liability policy issued by Employer's Mutual Casualty Company, an insurer authorized to transact business in the state of Colorado. The district court granted the motion and appointed Sommermeyer as personal representative of the estate. The case was tried to a jury, and a verdict of $270,000 was returned in favor of the Price children. Pursuant to the stipulation of the parties, the trial court entered judgment for $15,000, which represented the limits of the Price liability insurance policy. The court of appeals reversed the judgment, concluding that the liability policy issued to a non-domiciliary was not an asset subject to Colorado probate administration. This court granted certiorari and reversed the judgment of the court of appeals, reasoning as follows:

> [W]e conclude that a decedent's potential right of indemnity under a liability insurance policy is personal property encompassed within the comprehensive meaning of "property" as defined in the Colorado Probate Code, which provides that: " 'Property' includes both real and personal property or any interest therein and means anything that may be the subject of ownership." Section 15–10–201(36), C.R.S.1973. A potential right of indemnity under a liability insurance policy is a contingent contract right which vests when a liability claim against the insured ripens into judgment. Neither the intangible character nor the contingent nature of the right under the policy should logically prevent it from being the subject of ownership. *See generally* 63 Am.Jur.2d *Property* § 27.

The general rule is that the right of indemnity under a liability insurance policy is property justifying the grant of administration. At least twenty-one other states have considered this issue and have concluded that such a right under a liability insurance policy constitutes a sufficient asset or property for the appointment of an administrator and the probate of an estate. We adopt the general rule and therefore hold that a potential right of indemnity is personal property in the ownership of which the decedent had a right to be protected by law.

195 Colo. at 288–89, 577 P.2d at 755 (footnote omitted).

In light of our holding in *Sommermeyer* that an insurer's obligation to defend and indemnify a nonresident insured under an automobile liability policy constitutes a property interest of the insured for the purpose of a court's assertion of probate jurisdiction under the Colorado Probate Code, we would be indulging in nothing less than strained and artificial refinement were we to now hold that this same contractual obligation does not qualify as property of the insured for the purpose of a court's assertion of *quasi in rem* jurisdiction. To engraft such a refinement on our law would result in defining the term "property" solely on the basis of the type of jurisdiction asserted by the court and would deprive the term of any objective content by creating a distinction without any meaningful difference.[6]

The insurer's obligation to indemnify and defend an insured is contractual in nature and provides the insured with the right to a defense in the event a claim is made against the insured and the right to indemnification, up to the limits of the policy, in the event an adverse judgment is entered against the insured. The insured's contractual right, while intangible and contingent upon future events, as are many other contractual rights, clearly has economic value to the insured. Whether considered in the context of probate jurisdiction or *quasi in rem* jurisdiction, the insured's right to receive performance of the insurer's contractual obligation constitutes an enforceable contractual right, commonly referred to as a chose in action. We conclude, therefore, that an insurer's obligation to defend and indemnify a nonresident insured under an automobile liability policy vests the insured with a cognizable property interest under Colorado law.

The only remaining question is whether this property interest is exempt from attachment under Colorado law. The exemptions are set forth in section 13–54–102(1), 6A C.R.S. (1987), and do not include the property subject to this proceeding.[7] We

**6.** We find the federal district court's attempt to distinguish *Sommermeyer* unpersuasive. Although a personal representative must take steps to change rights in the property of the estate while a writ of attachment creates a lien upon the property upon the issuance of the writ, these differences relate only to the form of jurisdiction exercised by the court over the underlying interest in question and do not affect the nature of the underlying interest as property or nonproperty.

We acknowledge that some states have held that an insurer's obligation to indemnify an insured is so contingent and uncertain that it is not subject to prejudgment attachment or garnishment. *See, e.g., Javorek v. Superior Court*, 17 Cal.3d 629, 131 Cal.Rptr. 768, 552 P.2d 728 (1976); *Belcher v. Government Employees Insurance Co.*, 282 Md. 718, 387 A.2d 770 (1978); *Howard v. Allen*, 254 S.C. 455, 176 S.E.2d 127 (1970). We reject the reasoning of these cases and instead follow our reasoning in *Sommermeyer* in reaching a contrary result. *See also Rintala v. Shoemaker*, 362 F.Supp. 1044 (D.Minn.1973) (contractual obligation of insurer to defend and indemnify insured is contractual obligation subject to prejudgment attachment); *Forbes v. Boynton*, 113 N.H. 617, 313 A.2d 129 (1973) (same).

**7.** Section 13–54–102, 6A C.R.S. (1987), provides as follows:

(1) The following property is exempt from levy and sale under writ of attachment or writ of execution:

(a) The necessary wearing apparel of the debtor and each dependent to the extent of seven hundred fifty dollars in value;

(b) Watches, jewelry, and articles of adornment of the debtor and each dependent to the extent of five hundred dollars in value;

(c) The library, family pictures, and school books of the debtor and his dependents to the extent of seven hundred fifty dollars in value; except that this paragraph (c) shall not apply to any such property constituting all or part of the stock in trade of the debtor;

(d) Burial sites, including spaces in mausoleums, to the extent of one site or space for the debtor and each dependent;

thus answer the certified question as follows: Colorado law defines an insurer's obligation to indemnify and defend a nonresident insured as nonexempt property under C.R.C.P. 102(a), thereby subjecting the obligation to attachment by a Colorado resident seeking to obtain *quasi in rem* jurisdiction.

ERICKSON, J., dissents.

ROVIRA, C.J., and KIRSHBAUM, J., join in the dissent.

(e) The household goods owned and used by the debtor and used by his dependents to the extent of fifteen hundred dollars in value;

(f) Provisions and fuel on hand for the use or consumption of the debtor or his dependents to the extent of three hundred dollars in value;

(g) In the case of every debtor engaged, as his principal occupation, in agriculture or livestock or poultry raising, livestock and poultry not exceeding in the aggregate a value of three thousand dollars, and horses, mules, wagons, carts, machinery, harness, implements, and tools not exceeding in the aggregate a value of two thousand dollars.

(h) Except for amounts due under court-ordered support of children or spouse which are subject to the exemption provisions of section 13–54–104, all money received by any person as a pension, compensation, or allowance for any purpose on account or arising out of the services of such person as a member of the armed forces of the United States in time of war or armed conflict, and whether in the actual possession of the recipient thereof or deposited or loaned by him, and a like exemption to the unremarried widow or widower and the children of such person who receive a pension, compensation, or allowance of any kind from the United States on account or arising out of such service by a deceased member of such armed forces; and when a debtor entitled to exemption under this paragraph (h) dies or leaves his family said exemption shall extend to the dependents of said debtor;

(i) The stock in trade, supplies, fixtures, maps, machines, tools, equipment, books, and business materials of any debtor used and kept for the purpose of carrying on any gainful occupation in the aggregate value of fifteen hundred dollars;

(j)(I) One or more motor vehicles kept and used by any debtor for the purpose of carrying on any gainful occupation in the aggregate value of one thousand dollars;

(II)(A) One motor vehicle kept and used by any elderly or disabled debtor for the purpose of obtaining medical care for himself or his elderly or disabled dependent. The value of the vehicle shall not exceed three thousand dollars.

(B) For the purposes of this subparagraph (II): "Disabled person" means any person who has a physical or mental impairment which is disabling and which, because of other factors such as age, training, experience, and social setting, substantially precludes the person having such impairment from engaging in a useful occupation as a homemaker or as a wage earner in any employment which exists in the community for which he has competence; and "elderly person" means any person who is sixty-five years of age or older.

(k) The library of any debtor who is a professional person, including a minister or priest of any faith, kept and used by him in carrying on his profession, in the value of fifteen hundred dollars; except that exemptions with respect to any of the property described in this paragraph (k) may not also be claimed under paragraph (i) of this subsection (1);

(*l*) the avails of policies or certificates of life insurance to the extent of five thousand dollars;

(m) The proceeds of any claim for loss, destruction, or damage and the avails of any fire or casualty insurance payable because of loss, destruction, or damage to any property which would have been exempt under this article to the extent of the exemptions incident to such property;

(n) The proceeds of any claim for damages for personal injuries suffered by any debtor except for obligations incurred for treatment of any kind for such injuries or collection of such damages;

(*o*)(I) One house trailer or trailer coach to the extent of three thousand five hundred dollars in value while used and occupied as a place of residence by the owner;

(II) One mobile home to the extent of six thousand dollars while used and occupied as a place of residence by the owner;

(p) Professionally prescribed health aids for the debtor or a dependent of the debtor;

(q) The debtor's right to receive, or property that is traceable to, an award under a crime victim's reparation law;

(r) For purposes of garnishment proceedings pursuant to the provisions of article 54.5 of this title, any amount held by a third party as a security deposit, as defined in section 38–12–102(2), C.R.S., or any amount held by a third party as a utility deposit to secure payment for utility goods or services used or consumed by the debtor or his dependents.

(2) Notwithstanding the provisions of paragraph (h) of subsection (1) of this section and section 13–54–104, military pensions shall be subject to court-ordered support of children or spouse.

Justice ERICKSON respectfully dissenting:

The certified question in this case arose out of a federal diversity action, 28 U.S.C. § 1332(a)(2) (1988), wherein plaintiff-appellant Marjorie Baker filed an amended complaint in Colorado federal district court sounding in tort and seeking damages for personal injuries sustained in a September 4, 1981, automobile accident. Baker alleged that the other vehicle involved in the accident was rented by defendant Glyniss Jane Gartside from Budget Rent–A–Car Systems and was driven by defendant Elizabeth Young. Both defendants are Australia residents and Baker has been unable to effect personal service on either defendant.

Baker's initial complaint was filed on June 6, 1983. The federal district court dismissed the case without prejudice on July 31, 1985, because Baker was unable to serve the defendants. The case was refiled on December 12, 1986. Despite diligent efforts, Baker was unable to obtain service and petitioned for a writ of attachment prior to judgment, Fed.R.Civ.P. 64, C.R. C.P. 102(a), on the theory that the insurance policy provided by Budget Rent–A–Car to the renter of the car or an authorized driver constituted nonexempt property subject to attachment under C.R.C.P. 102(a).

The federal district court issued a Memorandum Opinion and Order and considered the division of authority,[1] but concluded that the obligation to indemnify and defend is not subject to prejudgment attachment. The federal district court therefore denied the petition for the writ of attachment, but certified its order denying the petition to the United States Circuit Court of Appeals for the Tenth Circuit.

The United States Circuit Court of Appeals for the Tenth Circuit concluded that the question of whether an insurer's obligation to indemnify and defend an insured constitutes property subject to prejudgment attachment under C.R.C.P. 102(a), is a question of state law, *Rush v. Savchuk,*

444 U.S. 320, 328 n. 14, 100 S.Ct. 571, 577 n. 14, 62 L.Ed.2d 516 (1980), and therefore certified the following question to this court:

> Whether Colorado law defines an insurer's obligation to indemnify and defend a non-resident insured as nonexempt property under Colo.R.Civ.P. 102(a) (Supp. 1989), thereby subjecting the obligation to attachment by a Colorado resident seeking to obtain *quasi in rem* jurisdiction?

The majority finds *Price v. Sommermeyer,* 577 P.2d 752 (Colo.1978), controlling and answers the question in the affirmative. I agree with the Memorandum Opinion and Order issued by Judge Alfred A. Arraj for the United States District Court and conclude the question should be answered in the negative.

## I.

In order to acquire *quasi in rem* jurisdiction, a two pronged test must be met. The defendant must have sufficient minimum contacts with the state to satisfy the substantial justice and fair play requirements established in *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). And, the plaintiff must successfully attach property owned and controlled by the defendant in the state in which the plaintiff seeks jurisdiction. *See* F. James & G. Hazard, *Civil Procedure* 75–78 (1985).

The constitutional question of whether the defendant has sufficient minimum contacts with Colorado to constitute a valid basis for the assertion of *quasi in rem* jurisdiction is not before this court. Whether property exists that may be attached is the question we must address.

## II.

Historically, attachable property fell within one of two categories. Such property could be tangible property of the defendant capable of being seized and sold in

---

1. *See* Annot., *Potential Liability of Insurer Under Liability Policy as Subject of Attachment,* 33 A.L. R.3rd 992, 996–1002 (1970 & 1989 Supp.).

satisfaction of judgment, or it could be a garnishable debt or contractual liability owed to the defendant by a third party. *Robinson v. Shearer & Sons, Inc.*, 429 F.2d 83, 85 (3d Cir.1970). In order to attach a debt owed to the defendant, under C.R.C.P. 102, the plaintiff must garnish the res of the debt in the possession of the third party. Colorado law permits the garnishment of debts and other intangibles in the aid of a writ of attachment pursuant to C.R.C.P. Rule 103 § 5.[2]

The majority finds that the contingent nature of the insurer's obligation to indemnify and defend the insured does not prevent it from being attached. However, in *Haselden Langley Constructors, Inc. v. Graybar Electric Company*, 662 P.2d 1064 (Colo.1983), we unanimously held, "It is well settled [law] that a contingent liability is not garnishable."[3] In reaching its conclusion, the majority follows the analysis of the New York Supreme Court in *Seider v. Roth*, 17 N.Y.2d 111, 269 N.Y.S.2d 99, 216 N.E.2d 312 (1966).[4] The *Seider* court determined that a liability insurer's contractual obligation to defend and indemnify a nonresident insured defendant under an automobile liability policy was attachable property under New York Law.[5] *Id.*

Every state, except New Hampshire,[6] that has considered whether a liability insurer's contractual obligation to defend and indemnify is attachable property has rejected the *Seider* analysis and conclusion.[7] The United States Court of Appeals for the Third Circuit has also rejected the *Seider* rule,[8] concluding that the insurer's obligation to indemnify the insured is not an attachable property interest, the insurer's obligation to defend the insured is not an attachable property interest, and practical considerations outweigh the utility of judicially establishing such a rule.

### III.

Because it may never become due and payable, a contingent indemnification obligation is too uncertain, inchoate and aleato-

---

**2.** C.R.C.P. 103 § 5(a) states,

"Writ of garnishment in aid of writ of attachment" means the exclusive procedure through which personal property of any kind of a defendant in an attachment action ... in the possession or control of the garnishee including the credits, debts, choses in action, or money owed to the judgment debtor, whether they are due at the time of the service of the writ or are to become due thereafter, is required to be held by a garnishee.

**3.** The court cites as precedent: *Keck v. Vogt,* 108 Colo. 382, 117 P.2d 1005 (1941); *Green v. Green,* 108 Colo. 10, 113 P.2d 427 (1941); *In re Stone,* 194 Colo. 394, 573 P.2d 98 (1977). The *Haselden* court further quotes *Stone,* "[A] judgment creditor [cannot] garnish sums which the judgment debtor himself could not recover from the garnishee." *Haselden,* 662 P.2d at 1065.

**4.** Although the majority does not rely on *Seider* for precedent, the majority's reasoning is parallel to that of the *Seider* court.

**5.** As the majority notes, the *Seider* rule was later modified by the United States Supreme Court to require that, in addition to attachable property, sufficient minimum contacts must exist to satisfy the requirements of *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). *Rush v. Savchuk,* 444 U.S. 320, 328–29, 100 S.Ct. 571, 577–78, 62 L.Ed.2d 516 (1980).

**6.** *Forbes v. Boynton,* 113 N.H. 617, 313 A.2d 129, 132 (1973).

**7.** California, Utah, Oklahoma, Missouri, Louisiana, South Carolina, Rhode Island, Pennsylvania, Maryland, Vermont, and Illinois have rejected the *Seider* rule in name or in principle. *Javorek v. Superior Court of Monterey County,* 17 Cal.3d 629, 552 P.2d 728, 741, 131 Cal.Rptr. 768, 781 (1976); *Housley v. Anaconda Co.,* 19 Utah 2d 124, 427 P.2d 390, 392 (1967); *Johnson v. Farmers Alliance Mut. Ins. Co.,* 499 P.2d 1387, 1390 (Okla.1972); *State, Government Employees Co. v. Lasky,* 454 S.W.2d 942, 947–48 (Mo.Ct. App.1970); *Kirchman v. Mikula,* 258 So.2d 701, 703 (La.Ct.App.1972); *Howard v. Allen,* 254 S.C. 455, 176 S.E.2d 127, 130 (1970); *De Rentiis v. Lewis,* 106 R.I. 240, 258 A.2d 464, 467 (1969); *Jardine v. Donnelly,* 413 Pa. 474, 198 A.2d 513 (1964); *Belcher v. Government Employees Ins. Co.,* 282 Md. 718, 387 A.2d 770, 773–74 (1978); *Ricker v. Lajoie,* 314 F.Supp. 401, 403 (D.Vt. 1970) (applying Vermont Law); *Longo v. AAA–Michigan,* 201 Ill.App.3d 543, 147 Ill.Dec. 150, 559 N.E.2d 150 (1990). The United States district court in Minnesota found that a contingent liability contract is attachable under a Minnesota statute that specifically states that such contracts are attachable. *Rintala v. Shoemaker,* 362 F.Supp. 1044, 1050 (D.Minn.1973).

**8.** *Robinson v. Shearer,* 429 F.2d at 86.

ry to amount to a "debt."[9] *Belcher v. Government Employees Ins. Co.*, 387 A.2d at 773. Before the insurer's obligation may become a debt, an external event must occur that is within the coverage of the policy, and the insured must perform all conditions precedent, and must cooperate with the insurer. *Howard v. Allen*, 176 S.E.2d at 129. In addition, a final judgment must be entered in order to transform the obligation into a debt. *Id.; Sommermeyer* 195 Colo. at 288–89, 577 P.2d at 755. In the case before the federal district court, no final judgment has been obtained and thus the obligation to indemnify has not vested and become a debt, therefore no property exists which may be attached or garnished.

A contingent liability may not be attached because an attaching creditor can acquire no greater right in attached property than the defendant possesses at the time of the attachment. *Howard v. Allen*, 176 S.E.2d at 130; *see Keck v. Vogt*, 108 Colo. at 385, 117 P.2d 1005. The judgment creditor may not garnish property which the judgment debtor himself may not recover from the garnishee. *Green v. Green*, 108 Colo. at 18, 113 P.2d 427. Therefore, if the defendant has not yet acquired an interest in the obligation to indemnify, which he cannot without a judgment, then his rights may not be disposed of or transferred, and are thus not attachable. *Howard v. Allen*, 176 S.E.2d at 130.

To subject a contingent obligation to attachment for the purposes of *quasi in rem* jurisdiction is to engage in circular and bootstrap reasoning. *State, Government Employees Ins. Co. v. Lasky*, 454 S.W.2d at 947. Such reasoning permits a court to assert jurisdiction and attach the purported obligation before any judgment in order to enable the court to then render a judgment, which is in fact the only event that can create the obligation in the first place. *Belcher v. Government Employees Ins. Co.*, 387 A.2d at 773.

Until a judgment is rendered against the insured, the funds necessary to meet the insurer's indemnity obligation are under the sole control and ownership of the insurer.[10] By allowing the attachment of the insurer's property, this court is allowing the plaintiff to physically attach and sequester the property of a third party for the purposes of obtaining *quasi in rem* jurisdiction over the defendant. C.R.C.P. 102 makes no provision for the attachment of the property of a third party to satisfy the liabilities of the defendant.

## IV.

The majority holds that the obligation of the insurer to defend the insured is an attachable property interest. The record before us does not include the liability insurance policy and is limited to the rental agreement, which makes no mention of the insurer's duty to defend the insured.[11]

Assuming the question is properly before this court, the obligation to defend is not an attachable property interest. Like the obligation to indemnify, the obligation to defend is too contingent, uncertain, and aleatory to constitute debt prior to the proper commencement of an action against the insured. *Javorek v. Superior Court of Monterey County*, 131 Cal.Rptr. at 780, 552 P.2d at 740. A determination that the

9. Recognizing the contingent nature of the obligation to indemnify, the *Seider* court based its holding on the duty to defend and not the duty to indemnify. *Seider v. Roth*, 17 N.Y.2d at 113–14, 269 N.Y.S.2d at 101–02, 216 N.E.2d at 314–15. *See* Comment, *Long–Arm and Quasi in Rem Jurisdiction and the Fundamental Test of Fairness*, 69 Mich.L.Rev. 300, 327 (1970).

10. The Pennsylvania Supreme Court has held that even after a judgment has been obtained against the defendant, the plaintiff may not attach the funds or property of the insurance carrier unless a judgment has also been rendered against the insurer. *Jardine v. Donnelly*, 198 A.2d at 513.

11. The United States Court of Appeals for the Tenth Circuit's certified question asks this court to determine the appropriateness of attaching both the obligation to indemnify and the obligation to defend. The federal district court, however, pointed out, "that the rental agreement details the liability limits but does not detail the terms, conditions, limitations, and restrictions of the policy. There is no mention of a duty to defend the insured in this agreement." Memorandum Opinion and Order at 23.

obligation to defend is attachable suffers from the same bootstrap and circular reasoning flaws as the attachment of the obligation to indemnify. *Robinson v. Shearer*, 429 F.2d at 86. And, like the obligation to indemnify, the res of the obligation to defend is the property of a third party until an action has been commenced, and therefore it may not be attached under C.R.C.P. 102.

The obligation to defend is not an obligation to pay money to the insured so that she may provide her own defense. Rather, it is an obligation to provide personal services. *Belcher v. Government Employees Ins. Co.*, 387 A.2d at 774. The value of these services are personal to the insured, and are thus not capable of being transferred or assigned. *Robinson v. Shearer*, 429 F.2d at 86. If services may not be transferred or assigned, they may not be attached. *Javorek v. Superior Court of Monterey County*, 131 Cal.Rptr. at 780, 552 P.2d at 740. *See* Comment, *Quasi in Rem Jurisdiction Based on Insurer's Obligations*, 19 Stan.L.Rev. 654, 655–56 (1967).

Assuming that a contract for personal services or to defend is attachable, there is no means to determine the value of an obligation to defend a party in a lawsuit. Because the extent of the obligation to defend is inchoate and uncertain at the time of attachment, it can not be translated into an economically valuable tangible property. *See* Comment, *Jurisdiction by Attachment of Liability Insurance*, 43 N.Y.U.L.Rev. 1075, 1083 (1968). If the obligation to defend did vest, it would be impossible to estimate the amount of money that will be spent on attorney's fees and court costs over the course of the litigation.

If the insurer fulfills his obligation to defend the insured, as the lawsuit reaches a conclusion, the value of the obligation will approach zero. At the time a judgment is entered, the value of the obligation to defend will be exhausted and there will be no proceeds out of which the plaintiffs

will be able to satisfy their judgment.[12] *Javorek v. Superior Court of Monterey County*, 131 Cal.Rptr. at 780, 552 P.2d at 740. *See* Comment, *Garnishment of Intangibles: Contingent Obligations and the Interstate Corporation*, 67 Colum.L. Rev. 550, 552 (1967).

If the court attaches an amount of money equal to that which it determines will be the value of the services to be rendered in defense of the insured, and allows the plaintiff to satisfy her judgment out of this fund, and then requires the insurer to defend the insured, the insurer will be subject to double liability for the obligation to defend. *See* Comment, *Quasi In Rem Jurisdiction Based on Insurer's Obligations*, 19 Stan.L.Rev. 654, 656 (1967). If the court requires the defendants to pay for their own defense, then the court defeats one of the main purposes of the insurance contract.

## V.

The practical considerations of a rule creating a property interest in contingent obligations to indemnify and defend outweigh the utility of establishing such a rule. The determination that contingent obligations are attachable property will allow a general creditor of the insured, or a second plaintiff to attach the obligation of the insurer and exhaust the res before the intended plaintiff receives a judgment. For instance, if a plaintiff obtains personal jurisdiction, creditors could use the holding of this court to attach the insurer's obligation. If the creditor successfully attaches the obligation, then the successful plaintiff will be deprived of the proceeds because the creditor will have a prior levy on the property. *Javorek v. Superior Court of Monterey County*, 131 Cal.Rptr. at 774, 552 P.2d at 734. *See* Stein, *Jurisdiction by Attachment of Liability Insurance*, 43 N.Y.U.L. Rev. 1075, 1124 (1968).

## VI.

In my view, *Price v. Sommermeyer*, 195 Colo. 285, 577 P.2d 752 (1978) is not per-

---

12. Alternatively, if the defendants fail to appear, as is likely when the defendants reside in Australia, a default judgement will be entered. As a result, the duty to defend will never arise and thus there will be nothing of value to attach.

suasive authority governing whether contingent obligations are property for purposes of attachment. Although *Sommermeyer* determined that contingent obligations were property for purposes of the grant of probate administration, such a determination does not necessarily require that contingent obligations are property for the purpose of *quasi in rem* jurisdiction. In fact, the California Supreme Court and an Illinois appellate court have held that a determination that a contingent obligation is property for probate matters does not provide authority for *quasi in rem* jurisdiction over a suit against a nonresident defendant.[13] *Javorek v. Superior Court of Monterey County,* 131 Cal.Rptr. at 781, 552 P.2d at 741; *Longo v. AAA–Michigan,* 201 Ill.App.3d 543, 147 Ill.Dec. 150, 559 N.E.2d 150 (1990).

The *Sommermeyer* ruling is an exception to the general rule that contingent obligations are not property subject to attachment and should not be expanded. *Haselden v. Graybar,* 662 P.2d at 1064. *See Javorek v. Superior Court of Monterey County,* 131 Cal.Rptr. at 775, 552 P.2d at 735. The primary reason for not expanding the exception to cover *quasi in rem* jurisdiction is that the impact on the property of the defendant in an attachment action is significantly different than that in a mere grant of probate administration. An administrator is vested with the "same power over the title to property of the estate that an absolute owner would have, in trust however, for the benefit of the creditors and others interested in the estate." § 15–12–711, 6A C.R.S. (1987). The title of the property is thus not immediately affected by the appointment. Yet, when a writ of attachment is executed, it requires the attachee to turn over to the sheriff the property attached. The property is then held by the court until a final judgment is rendered in the dispute.

If the court grants probate administration and ultimately makes a disposition of the case in favor of the defendant, the defendant has suffered no undue hardship. However, if the court attaches the property for *quasi in rem* jurisdiction and ultimately rules in favor of the defendant, the defendant has lost the use of his property for the entire period of the time of the trial. In fact, if the court makes an ultimate ruling in favor of the defendant, then the res was never the property of the insured, and the court never had a right to attach the property.

Accordingly, I respectfully dissent.

I am authorized to say that Chief Justice ROVIRA and Justice KIRSHBAUM join in this dissent.

---

**13.** The court in *Javorek* stated, "[w]e believe that there are sufficiently different factors and considerations involved in the situation where the nonresident defendant is deceased, as opposed to the instant case where the defendants are alive, that the argument in favor of the existence of an estate for purposes of probate jurisdiction is not persuasive as to whether contingent obligations of an insurer are attachable." *Javorek v. Superior Court of Monterey County,* 131 Cal. Rptr. at 781 n. 11, 552 P.2d at 740 n. 11.